IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHELLE R. CARPER,

        Plaintiff,

v.

VWR SCIENTIFIC PRODUCTS
CORPORATION, and VWR
INTERNATIONAL, INC.,

        Defendants.

Civil Action No.  04-0126

OPENING BRIEF IN SUPPORT OF DEFENDANTS VWR
SCIENTIFIC PRODUCTS CORPORATION AND VWR
INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

Dated:  April 15, 2005

David P. Primack (DE 4449)
Drinker Biddle & Reath LLP
1100 N. Market Street, Suite 1000
Wilmington, Delaware 19801-1254
Telephone:  302-467-4224
Fax:  302-467-4201

Counsel for Defendant

Of Counsel:

Kathryn H. Levering
Admitted pro hac vice
James G. Fannon
Admitted pro hac vice
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103-6996

# I.  TABLE OF CONTENTS

II.  TABLE OF CITATIONS ....................................................................................III

III.  STATEMENT OF THE NATURE AND STAGE OF THE
      PROCEEDING .............................................................................................1

IV.  SUMMARY OF ARGUMENT ......................................................................1

V.  STATEMENT OF FACTS ..............................................................................2

    A.  THE ESSENTIAL FUNCTIONS OF PLAINTIFF'S
        SHIPPER/RECEIVER POSITION...................................................................3

    B.  PLAINTIFF'S CLAIMED DISABILITY. ......................................................3

    C.  REPORTING OF PLAINTIFF'S CLAIMED WORKPLACE INJURY..........................4

    D.  MR. STEED DID NOT FALSIFY ANYTHING..................................................4

    E.  PLAINTIFF'S MEDICAL LEAVE BEGINNING AUGUST 19, 2002.......................5

    F.  THE TEMPORARY DATA ENTRY ASSIGNMENT AT CHESTNUT
        RUN BEGINNING NOVEMBER 13, 2002...........................................5

    G.  THE FURTHER RESTRICTIONS PLAINTIFF REQUESTED IN
        FEBRUARY  2003 PRECLUDED HER FROM PERFORMING THE
        DUTIES OF THE SHIPPER/RECEIVER JOB. .........................................7

VI.  ARGUMENT ....................................................................................................8

    A.  SUMMARY JUDGMENT STANDARD ............................................................8

    B.  ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE PLAINTIFF
        CANNOT PROVE CONSTRUCTIVE DISCHARGE, THE
        PREDICATE TO EACH. ......................................................................10

    C.  PLAINTIFF'S ADA CLAIMS FAIL BECAUSE SHE WAS NOT
        "DISABLED," NOT "OTHERWISE QUALIFIED," AND BECAUSE
        VWR PROVIDED HER MORE "ACCOMMODATION" THAN
        THE LAW WOULD HAVE REQUIRED HAD SHE BEEN
        "DISABLED."...................................................................................14

        1.  *Plaintiff Was Not "Disabled."*..........................................15

        2.  *Plaintiff Was Not "Otherwise Qualified" To
           Perform The Shipper/Receiver Position.* ...........................16

        3.  *Plaintiff Was Not Actually Or Constructively
           Discharged.*.......................................................................17

        4.  *VWR Provided Plaintiff With More
           "Accommodation" Than The ADA Would Have
           Required Had Plaintiff Had A Qualifying Disability*........................17

    D.  PLAINTIFF HAS NO CLAIM UNDER THE DELAWARE
        WORKERS' COMPENSATION STATUTE BECAUSE SHE CEASED
        TO BE QUALIFIED TO PERFORM THE DUTIES OF HER
        EMPLOYMENT IN OCTOBER OR NOVEMBER OF 2002. ...................19

    E.  PLAINTIFF'S WRONGFUL DISCHARGE CLAIM IS BOTH
        PRECLUDED BY THE DELAWARE'S WORKERS'
        COMPENSATION STATUTE AND INSUFFICIENT TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...........................19

VII.  CONCLUSION ...............................................................................................21

II.    **TABLE OF CITATIONS**

<u>CASES</u>

Anderson v. Liberty Lobby, 477 U.S. 242  (1986) ....................................................... 9, 10

Benson v. Northwest Airlines, Inc., 62 F.3d 1108 (8th Cir. 1995) ................................... 18

Bragdon v. Abbott, 524 U.S. 624 (1998) ......................................................................... 15

Bristow v. Daily Press, Inc., 770 F.2d 1251 (4th Cir. 1985) ...................................... 10, 12

Cella v. Villanova Univ., No. 03-1749, 2004 U.S. App. LEXIS 21740, at *1
    (3d Cir. Pa. Oct. 19, 2004) .................................................................................... 16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................. 8, 10

Childers v. Joseph, 842 F.2d 689 (3d Cir. 1987) ............................................................... 9

Chu v. Samuel Geltman & Co., No. 92-4480, 1993 U.S. Dist. LEXIS 17473 at
    *1 (E.D. Pa. Nov. 17, 1993) ..................................................................................... 9

Clowes v. Allegheny Valley Hosp., 991 F.2d at 1159 (3d Cir.), cert. denied,
    510 U.S. 964 (1993) .............................................................................................. 13

Colwell v. Suffolk County Police Dep't, 158 F.3d 635 (2nd Cir. 1998) ......................... 16

Connors v. Franklin Financial Corp., 160 F.3d 971 (3d Cir. 1998) ......................... 11, 13

E.I. duPont de Nemours & Co. v. Pressman, 679 A.2d 436 (Del. 1996) ........................ 20

Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141 (3d
    Cir. 1987) ............................................................................................................... 10

Gaul v. Lucent Technologies, 134 F.3d 576 (3d Cir. 1998) ..................................... 14, 17

Gerdes v. Swift-Eckrich, 949 F. Supp. 1386 (N.D. Iowa 1996), aff'd, 125 F.3d
    634 (8th Cir. 1997) ................................................................................................. 16

Glozman v. Retail, Wholesale & Chain Store Food Employees Union, Local
    338, 204 F. Supp. 2d 615 (S.D.N.Y. 2002) ........................................................... 16

Goss v. Exxon Office Sys. Co., 747 F.2d 885 (3d Cir. 1984) ......................................... 10

Gray v. York Newspapers, Inc., 957 F.2d 1070 (3d Cir. 1992) ........................... 10, 12, 13

Griffiths v. CIGNA Corp., 988 F.2d 457 (3rd Cir. 1993) ................................................ 10

Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995) ................................... 10

Helfter v. United Parcel Service, Inc., 115 F.3d 613 (8th Cir. 1997) ............................. 16

Improvement Co. v. Munson, 14 Wall. 442 (1872) ........................................................... 9

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990) .................................................... 9

Maher v. Associated Services for the Blind, 929 F. Supp. 809 (E.D. Pa. 1996) ............. 12

Marinelli v. City of Philadelphia, 216 F.3d 354 (3d Cir. 2000) .................................... 16

Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ....................... 10

McKay v. Toyota Motor Mfg., USA, Inc., 110 F.3d 369 (6th Cir. 1997) ....................... 16

Mitchell v. Henderson, No. 99-1205, 2000 U.S. App. LEXIS 274, at *1 (10th Cir. Jan. 7, 2000) ......................................................................................................... 16

Pennsylvania State Police v. Suders, 124 S. Ct. 2342 (2004).......................................... 10

Piascyk v. City of New Haven, 64 F. Supp. 2d 19 (D.Conn. 1999), aff'd without op., 216 F.3d 1072 (2nd Cir. 2000) ................................................... 16

Ray v. Glidden Co., 85 F.3d 227 (5th Cir. 1996) ............................................................ 16

Ridgewood Bd. Of Educ. v. N.E. for M.E., 172 F.3d 238 (3d Cir. 1999)...................... 10

Rondon v. Wal-Mart, Inc., 1998 U.S. Dist. LEXIS 16137 (N.D. Cal. Oct. 8, 1998) .............................................................................................................................. 16

Schuster v. Derocili, 775 A.2d 1029 (Del. 2001) ............................................................ 20

Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9491, at *1 (D. Del. July 10, 2001)............................................................................11, 13

Shiring v. Runyon, 90 F.3d 827 (3d Cir. 1996) ................................................................ 14

Snow v. Ridgeview Medical Ctr., 128 F.3d 1201 (8th Cir. 1997)................................... 16

Sunshine Books v. Temple Univ., 697 F.2d 90 (3d Cir. 1982) ........................................ 9

Taylor v. Phoenixville Sch. Dist., 184 F.3d 296 (3d Cir. 1999)..................................... 14

Walton v. Mental Health Ass'n, 168 F.3d 661 (3d Cir. 1999) ........................................ 17

Williams v. West Chester, 891 F.2d 458 (3d Cir. 1989) .................................................. 9

Wooten v. Farmland Foods, 58 F.3d 382 (8th Cir. 1995)................................................ 16

## STATUTES

19 Del. C. § 2365 ............................................................................................................. 19

42 U.S.C. § 12102.............................................................................................................. 15

42 U.S.C. § 12112.............................................................................................................. 17

## RULES

Fed. R. Civ. P. 56............................................................................................................... 8

## REGULATIONS

29 C.F.R. § 1630.2(o) App. .............................................................................................. 18

## III.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff Michelle R. Carper ("Carper") filed this action against her former employer, VWR International, Inc., formerly known as VWR Scientific Products Corporation ("VWR"), under the Americans with Disabilities Act ("ADA"), Section 2365 of Title 19 of the Delaware Code, and Delaware common law, alleging that VWR constructively discharged her by failing to accommodate a claimed disability, or because she filed workers compensation claims, or to "cover up" a delay in reporting a claimed workplace injury. In her deposition, however, Plaintiff recanted every material allegation in the Complaint, leaving no triable issue and foreclosing all of her claims.

Discovery closed on March 31, 2005. VWR now brings its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## IV.    SUMMARY OF ARGUMENT

1.    Each of Plaintiff's claims is predicated upon proving a "constructive discharge"; namely, that VWR subjected her to such intolerable working conditions that a reasonable person in her position would have felt compelled to resign. Plaintiff's deposition testimony establishes that she was not fired; that she did not resign; that that her working conditions were no different from other employees, and, in some instances, were more favorable; and, that the differences she perceived are insufficient, as a matter of law, to permit her claim of "constructive discharge" to proceed.

2.    Plaintiff's ADA claims fail because Plaintiff's lifting restrictions were insufficient as a matter of law to constitute a disability and, by her own admission, she was not "otherwise qualified" to perform the essential functions of the Shipper/Receiver position.

3.      To have continued Plaintiff's active employment beyond February 6, 2003, VWR would have had to create a new position for Plaintiff because Plaintiff concedes she could do only clerical work and none was available.  The ADA does not impose those obligations on an employer.

4.      Under the express terms of the Delaware Workers' Compensation Statute, Plaintiff's claim that VWR retaliated against her fails because she admits that, as of October or November 2002,  she ceased to be qualified for the Shipper/Receiver position.

5.      Plaintiff's common law wrongful discharge claim is barred by the Delaware Workers' Compensation Statute's exclusivity provision and is otherwise insufficient.

## V.      STATEMENT OF FACTS[1]

VWR is in the business of distributing laboratory chemicals, supplies, and equipment.  Incident to its core business, VWR provides managed services and personnel to certain customers.  One such customer is DuPont Corporation, for which VWR manages shipping and receiving operations at several DuPont locations in Delaware, including facilities known as the "Beech Street" location and the "Chestnut Run" location.  VWR Shippers and Receivers, as their titles imply, ship and receive freight from DuPont docks.  (See generally Compl., D.I. 1.)

VWR hired Plaintiff as a Shipper in August 2001.[2]  (Pl.'s Dep. Tr. at 25, the cited pages of which are attached collectively as Ex. 1.)

---

[1] By setting forth herein the facts in the light most favorable to Plaintiff for the purposes of its Motion for Summary Judgment, VWR does not waive, and specifically reserves, the right to contest any and all facts Plaintiff has asserted or may assert in this action.

A.    THE ESSENTIAL FUNCTIONS OF PLAINTIFF'S SHIPPER/RECEIVER POSITION.

Plaintiff was responsible for packing items and preparing them to be shipped.  (Pl.'s Dep. Tr., Ex. 1, at 17.)  Integral to the performance of Plaintiff's Shipper position were the requirements that she consistently lift up to 50 pounds, carry items weighing up to 50 pounds for up to 20 feet, stand for extended periods, bend, squat, kneel, and, at least every day, drive a forklift.  (Pl.'s Dep. Tr., Ex. 1, at 17-24.)  Plaintiff was also required occasionally to climb.  (Pl.'s Dep. Tr., Ex. 1, at 20-21.)  Those remained the essential functions of Plaintiff's Shipper position from August 2001, when VWR rehired her, through at least February 2003, when she went on a medical leave of absence.  (Pl.'s Dep. Tr., Ex. 1, at 25.)

B.    PLAINTIFF'S CLAIMED DISABILITY.

In March 2002, Plaintiff claimed she hurt her back on the job, lifting a 30-pound box.  (Pl.'s Dep. Tr., Ex. 1, at 32.)  She did not seek medical attention until two months later and, during that time, continued to do her job without restriction.  (Pl.'s Dep. Tr., Ex. 1, at 40, 81, 102.)[3]

In May 2002, Plaintiff provided a doctor's note excusing her from work on May 20 and 21, 2002, and restricting her from lifting over 5 pounds for 7 days, from

---

(..continued)

[2] Plaintiff had a previous term of employment with VWR that is not at issue in this action.  VWR rehired her.

[3] VWR disputes that Plaintiff injured herself on the job.  She told her supervisor and co-worker she had hurt her back at home.  This dispute is immaterial to this Motion and, for purposes of this Motion, VWR accepts Plaintiff's version.

May 23-31, 2002. (Pl.'s Dep. Tr., Ex. 1, at 104.) VWR complied with these restrictions. (Pl.'s Dep. Tr., Ex. 1, at 105-08.)

After Plaintiff's temporary lifting restriction expired in May 2002, Mr. Steed and Plaintiff's co-workers continued to perform Plaintiff's lifting duties for an additional three months – until Plaintiff went out on medical leave in August 2002. (Pl.'s Dep. Tr., Ex. 1, at 106-08.) Plaintiff described her supervisor, Keith Steed, as "sympathetic," "concerned," and "compassionate." (Pl.'s Dep. Tr., Ex. 1, at 54-57.)

### C.   REPORTING OF PLAINTIFF'S CLAIMED WORKPLACE INJURY.

In July 2002, Plaintiff telephoned VWR's Human Resources department to discuss the possibility of her receiving disability benefits. (Pl.'s Dep. Tr., Ex. 1, at 69.) Plaintiff then completed an accident report. (Pl.'s Dep. Tr., Ex. 1, at 73.) In her Complaint, Plaintiff had alleged that Mr. Steed changed the report as part of a "cover up.". (Compl., D.I. 1, at ¶ 12.) Plaintiff recanted that allegation in her deposition. She described Mr. Steed as "honest" and agreed that she entered the information on the submitted report and it was accurate. (Pl.'s Dep. Tr., Ex. 1, at 57, 78.) She further agreed that Mr. Steed did not engage in any "cover up," and that the term "cover-up" in the Complaint was "ill-chosen." (Pl.'s Dep. Tr., Ex. 1, at 75, 82-84, 85-86; Compl., D.I. 1, at ¶ 12.)

### D.   MR. STEED DID NOT FALSIFY ANYTHING.

Plaintiff also alleged in the Complaint that Mr. Steed "falsified" time records as part of a "cover up." (Compl., D.I. 1, at ¶ 12.) Plaintiff recanted this testimony as well. She explained that she had suspected an error in the counting of her vacation days, but admitted she was unsure of her conclusion, had no records to support

it, and never contacted Mr. Steed or anyone in Payroll or Human Resources or elsewhere in VWR about the matter.  (Pl.'s Dep. Tr., Ex. 1, at 99-101.)

Once again, Plaintiff admitted that she had no reason to doubt Mr. Steed's honesty, that he did not falsify anything, and that the term "falsified" in the Complaint was "ill-chosen."  (Pl.'s Dep. Tr., Ex. 1, at 57, 101.)

### E.    PLAINTIFF'S MEDICAL LEAVE BEGINNING AUGUST 19, 2002.

On August 15, 2002, Plaintiff called her family physician and asked for a note prescribing three weeks off from work.  (Pl.'s Dep. Tr., Ex. 1, at 109-15; Dr. Dear Telephone Record dated 8/16/02 (Dep. Ex. D-8), attached as Ex. 2.)  Her physician, Nancy Dear, without examining Plaintiff, provided a note prescribing leave beginning August 19, 2002, with a return date of September 9, 2002.  (Id.)

On September 3, 2002, Plaintiff called Dr. Dear's office and asked that the doctor extend Plaintiff's time off work through the end of September 2002.  (Pl.'s Dep. Tr., Ex. 1, at 116; Dr. Dear Telephone Record dated 9/3/02 (Dep. Ex. D-9), attached as Ex. 3.)  Dr. Dear provided a note excusing Plaintiff from work through September 15, 2002, and instructed Plaintiff to see a back specialist.  (Pl.'s Dep. Tr., Ex. 1, at 116-17; Dr. Dear Note (Dep. Ex. D-10), attached as Ex. 4.)  Throughout September and October, Plaintiff did not work.

### F.    THE TEMPORARY DATA ENTRY ASSIGNMENT AT CHESTNUT RUN BEGINNING NOVEMBER 13, 2002.

In November, 2002, VWR contacted Plaintiff to see if she could fill a temporary data entry assignment, different from her Shipper/Receiver job, at DuPont's Chestnut Run location.  (Pl.'s Dep. Tr., Ex. 1, at 140-41.)  Plaintiff began the clerical assignment on November 13, 2002.  (Pl.'s Dep. Tr., Ex. 1, at 130-32, 142.)   Plaintiff was

asked to input information gathered by others into a computer as part of an inventory project. (Pl.'s Dep. Tr., Ex. 1, at 143.) Over time, all of the information was entered and the temporary clerical assignment was completed in late December 2002. (Pl.'s Dep. Tr., Ex. 1, at 143.) Plaintiff then returned to her permanent assignment of Shipper/Receiver. (Pl.'s Dep. Tr., Ex. 1, at 163-64.) At that time, Plaintiff was not subject to any lifting or other restrictions by her physician. (Pl.'s Dep. Tr., Ex. 1, at 130-32; Dr. Dear Note dated 11/8/02 (Dep. Ex. D-14), attached as Ex. 5.) Nonetheless, because Plaintiff had earlier submitted a chiropractor's note suggesting a 10-pound lifting restriction, (Pl.'s Dep Tr., Ex. 1, at 127-28), VWR continued to respect that limitation.

VWR limited Plaintiff's duties to scanning, which required Plaintiff to slide boxes from a main conveyor belt onto a connected conveyor belt leading to her duty station, scan them in, and slide them further down the main conveyor belt. (Pl.'s Dep. Tr., Ex. 1, at 145.) While some lifting was required when moving boxes from the main conveyor belt to the conveyor leading to her station, (Pl.'s Dep. Tr., Ex. 1, at 145), Plaintiff agrees that her supervisor, Rachel Talmo, did not "demand," as alleged in the Complaint, (Compl., D.I. 1, at ¶ 22), or ask that Plaintiff lift any boxes above the 10-pound limit. (Pl.'s Dep. Tr., Ex. 1, at 127-29, 166.)

Plaintiff concedes that no one ever told her she had to lift, push, or pull anything that weighed over 10 pounds. (Pl.'s Dep. Tr., Ex. 1, at 152.) Plaintiff further testified that, anytime she requested help lifting items weighing more than 10 pounds, she received it. (Pl.'s Dep. Tr., Ex. 1, at 153-55.) On about 10 occasions, when Plaintiff says she did not ask for help in lifting over 10 pounds, she says her only reason for not calling for help was that her co-workers "were doing what they're supposed to be doing." (Pl.'s

6

Dep. Tr., Ex. 1, at 155-56.)  Plaintiff concedes that, at no time did she ever approach Ms.

Talmo, or contact anyone in VWR management or Human Resources, with any concern

about the help available to her.  (Pl.'s Dep. Tr., Ex. 1, at 157-58.)

> **G.    THE FURTHER RESTRICTIONS PLAINTIFF REQUESTED IN FEBRUARY 2003 PRECLUDED HER FROM PERFORMING THE DUTIES OF THE SHIPPER/RECEIVER JOB.**

On February 3, 2003, Plaintiff telephoned Dr. Dear's office and asked for

a note telling VWR that she could not do the Shipper/Receiver job and could do only

clerical or computer work.  (Pl.'s Dep. Tr., Ex. 1, at 157-58; Dr. Dear Progress Notes and

Telephone Record dated 2/3/03, attached with certification of record custodian as Ex. 6.)

Dr. Dear told Plaintiff she could not do this and instead provided Plaintiff a note saying

she could not bend at all and could not lift over 5 pounds.  (Id.)  Dr. Dear prescribed these

limitations for 30 days.  (Id.; Dr. Dear Note dated 2/4/03, attached with certification of

record custodian as Ex. 7.)

These restrictions prevented Plaintiff from doing the job of

Shipper/Receiver.  Plaintiff agrees that, since October or November 2002, she had been

continuously unable to perform the essential functions of the Shipper/Receiver position.

(Pl.'s Dep. Tr., Ex. 1, at 31-32, 149-50.)  Plaintiff testified that, by February 2003, she

could not lift, bend or squat, all of which are essential to the Shipper/Receiver position,

and that the only work she could do was office or clerical work.  (Pl.'s Dep. Tr., Ex. 1, at

149-50, 172-73.)

Plaintiff began a medical leave of absence on February 6, 2003.  (Pl.'s

Dep. Tr., Ex. 1, at 170-72; Letter from Knepper to Carper of 2/7/2003 (Dep. Ex. D-17),

attached as Ex. 8.)  Plaintiff understood that, when her 30-day restriction of no bending

and lifting expired, or when she otherwise became able to perform her Shipper/Receiver

position, she could have returned to it at any time during or at the end of her 90-day medical leave. (Pl.'s Dep. Tr., Ex. 1, at 178-79.) Plaintiff failed to return to work during this period and, except to perfect her application for disability benefits, did not contact VWR. (Pl.'s Dep. Tr., Ex. 1, at 178-79.)

Plaintiff agrees that VWR did not discharge her, she never resigned from VWR, and there were no vacant clerical positions at VWR at the time of her medical leave and she did not apply for any. (Pl.'s Dep. Tr., Ex. 1, at 171-73, 178.)

Plaintiff also testified that, in May 2003, she did not consider herself employed by VWR any longer and filed for unemployment compensation benefits. (Pl.'s Dep. Tr., Ex. 1, at 178.)

## VI.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs the grant of summary judgment and provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). When the non-moving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the non-moving party's evidence is insufficient to carry that burden. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party demonstrates that no genuine issue exists and that, as a matter of law, it is entitled to judgment, the burden then shifts to the non-moving party to introduce evidence beyond the allegations in the complaint which creates a

genuine issue of material fact.  See Sunshine Books v. Temple Univ., 697 F.2d 90, 96 (3d

Cir. 1982).

> For a factual dispute to be "genuine," the evidence presented must be such

that a reasonable jury could return a verdict for the non-moving party:

> [T]he judge must ask . . . whether a fair-minded jury could return a
> verdict for the plaintiff on the evidence presented.  The mere
> existence of a scintilla of evidence in support of the plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff. . . . 'upon whom the
> onus of proof is imposed.'

Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986) (quoting Improvement Co. v.

Munson, 14 Wall. 442, 448 (1872)).

> The evidence must be admissible, not merely hearsay or conclusory

allegations.  See, e.g., Williams v. West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  To

defeat a motion for summary judgment, the non-moving party:

> may not rest upon mere denials of the facts identified by the
> movant as supportive of its position, nor upon the vague and
> amorphous argument that the record somewhere contains facts
> sufficient to support its claims, Childers v. Joseph, 842 F.2d 689
> (3d Cir. 1987), nor upon substituting 'conclusory allegations of the
> complaint . . . with conclusory allegations of an affidavit.'

Chu v. Samuel Geltman & Co., No. 92-4480, 1993 U.S. Dist. LEXIS 17473 at *6 (E.D.

Pa. Nov. 17, 1993)[4] (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888

(1990)).

> Rather, "the non-moving party has the duty to set forth specific facts

showing that a genuine issue of material fact exists and that a reasonable fact finder could

rule in its favor."  Ridgewood Bd. Of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir.

---

[4] Unreported decisions are attached collectively as Ex. 9.

1999) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986);

<u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995)).  That evidence

must be "significantly probative," not merely "colorable," to avoid summary judgment.

<u>See</u> <u>Anderson</u>, 477 U.S. at 249-50.

   If a non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to [his] case, and on which that party will bear the

burden of proof at trial," a court must enter summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S. at

322; <u>Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.</u>, 812 F.2d 141 (3d Cir.

1987).

  **B.** **ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE PLAINTIFF CANNOT PROVE CONSTRUCTIVE DISCHARGE, THE PREDICATE TO EACH.**

   Each count of the Complaint is based upon Plaintiff's claim that she was

constructively discharged.

   The Third Circuit has established that, to raise a viable claim of

constructive discharge, the plaintiff must show that "the employer knowingly permitted

conditions of discrimination in employment so intolerable that a reasonable person

subject to them would resign."  <u>Goss v. Exxon Office Sys. Co.</u>, 747 F.2d 885, 888 (3d

Cir. 1984).  <u>Accord</u> <u>Pennsylvania State Police v. Suders</u>, 124 S. Ct. 2342, 2354 (2004)

(plaintiff must prove employer subjected her to working conditions so intolerable that a

reasonable person in plaintiff's position would have felt compelled to resign).  The test is

purely objective.  <u>Id.</u>  "[T]he law does not permit an employee's subjective perceptions to

govern a claim of constructive discharge."  <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d

1070, 1083 (3d Cir. 1992) (quoting <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th

Cir. 1985)).

To establish a constructive discharge, the Plaintiff must prove that the conditions exceed an objective threshold of intolerability, where the plaintiff does not merely consider resignation the best decision, or even subjectively the only decision, but rather, where a reasonable person would feel "compelled to resign" based on the belief that she had no other choice. Connors v. Franklin Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998). Plaintiff's allegations do not meet this rigorous test.

Plaintiff bases her constructive discharge claim on three circumstances.[5] Plaintiff asserts that she had to knock to gain entry to the Chestnut Run facility because her supervisors had not gotten around to getting her a passkey (albeit, she concedes, not intentionally so). (Pl.'s Dep. Tr., Ex. 1, at 160-62.) Plaintiff also asserts that, as the demands of the inventory project on which she was given a temporary clerical assignment waned, she would spend one or two full days each week doing no work while being paid. (Pl.'s Dep. Tr., Ex. 1, at 162-65.) While the lack of a passkey may have been an annoyance and the lament that she was paid for not working some days is curious, these circumstances surely, as a matter of law, cannot be relied upon to support a claim that a reasonable person would have believed them so intolerable that she had no other choice but to resign.

As this Court has held, "the mere fact that the plaintiff feels uncomfortable or considers her working environment unduly stressful is an insufficient basis for a constructive discharge claim." Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9491, at *37-*38 (D. Del. July 10, 2001) (quoting Maher v. Associated

---

[5] Plaintiff retracted the assertion in the Complaint that VWR "conspired" to constructively discharge her by testifying that the assertion was speculation and that she has no evidence to support it. (Pl.'s Dep. Tr., Ex. 1, at 158-59.)

Services for the Blind, 929 F. Supp. 809, 814 (E.D. Pa. 1996) (citing Bristow, 770 F.2d at

1255)), aff'd without op., 107 F.3d 862 (3d Cir. 1997).  The Third Circuit has explained:

> The law does not permit an employee's subjective perceptions to
> govern a claim of constructive discharge.  Every job has its
> frustrations, challenges and disappointments; these inhere in the
> nature of work.  An employee is protected from a calculated effort
> to pressure her into resignation through the imposition of
> unreasonably harsh conditions, in excess of those faced by her co-
> workers.  She is not, however, guaranteed a working environment
> free of stress.  The employment discrimination laws require as an
> absolute precondition to suit that some adverse employment action
> have occurred.  They cannot be transformed into a palliative for
> every workplace grievance, real or imagined, by the simple
> expedient of quitting.

Gray, 957 F.2d at 1083 (3rd Cir. 1992).

Similarly insufficient is Plaintiff's third basis for the constructive

discharge claim that forms the basis of each count in her Complaint.  She claims that

VWR returned her to Shipping/Receiving "with no help."  (Pl.'s Dep. Tr., Ex. 1, at 160.)

Those are not the facts as Plaintiff tells them.  Plaintiff testified that help in lifting was

available to her at all times and she received such help each time she requested it.  (Pl.'s

Dep. Tr., Ex. 1, at 152-58, 166-67, 169.)  Plaintiff also testified that neither Ms. Talmo

nor anyone else at VWR ever demanded or asked Plaintiff to lift, push, or pull anything

beyond her restriction.  (Pl.'s Dep. Tr., Ex. 1, at 152-58, 166-67, 169).  And, Plaintiff

agrees that she never told Ms. Talmo, or anyone in VWR management or Human

Resources, that she had a concern about the help available to her.  (Pl.'s Dep. Tr., Ex. 1,

at 157-58.)

This failure, independent of the thinness of Plaintiff's allegations of

intolerable conditions, and the fact that Plaintiff neither quit nor was discharged, (Pl.'s

Dep. Tr., Ex. 1, at 171-72, 179), defeats her claim of constructive discharge.  Any

Plaintiff claiming constructive discharge is required to show that she attempted to explore alternatives before ending her employment. Connors, 160 F.3d at 975 ("a prerequisite to a successful constructive discharge claim is that the plaintiff attempted to explore alternatives before electing to resign.") (citing See Clowes v. Allegheny Valley Hosp., 991 F.2d at 1159, 1162 (3d Cir.), cert. denied, 510 U.S. 964 (1993)).  "[I]t is unrealistic to expect that . . . an employee will make a decision to retire on the basis of an assumption without further inquiry into the matter." Id. (quoting Gray, 957 F.2d at 1086).

On this point, this Court's decision in Seldomridge is instructive. In that case, the plaintiff could not show that her employer had actual or constructive knowledge of comments she claimed were sexually harassing. Seldomridge, 2001 U.S. Dist. LEXIS 9491, at 38. Nor had the plaintiff used the employer's complaint procedure that she had previously used with success. Id. at *38-*39. The Court thus held that the plaintiff "has not shown that [the employer] intentionally made her working conditions intolerable, or even that [the employer] should have been aware" of the conduct at issue, and entered judgment against the plaintiff on her constructive discharge claim. Id. at *38. Here, the undisputed evidence is that Plaintiff knew, when she began her 90-day medical leave on February 6, 2003, that she could return to her Shipper position when her 30-day restriction expired or by the end of her leave, but never did; and, never made any attempt to contact VWR to explore alternatives. (Pl.'s Dep. Tr., Ex. 1, at 170, 172, 178-79.)

And, as discussed more fully below, contrary to any suggestion that VWR subjected her to intolerable working conditions, the undisputed facts show that VWR worked with Plaintiff to an extent greater than the law would have required had Plaintiff had a qualifying disability. Plaintiff simply cannot reconcile her contention that VWR

forced her to resign with the undisputed fact that, while on medical leave, VWR reached

out to her and offered her the opportunity to work a different and temporary clerical

assignment, which she willingly accepted.

The undisputed facts and the appropriate rigorous burden of proof Plaintiff

bears foreclose any viable claim of constructive discharge under each count of the

Complaint.

C.    **PLAINTIFF'S ADA CLAIMS FAIL BECAUSE SHE WAS NOT "DISABLED," NOT "OTHERWISE QUALIFIED," AND BECAUSE VWR PROVIDED HER MORE "ACCOMMODATION" THAN THE LAW WOULD HAVE REQUIRED HAD SHE BEEN "DISABLED."**

Plaintiff claims that VWR constructively discharged her by failing to

provide or in retaliation for her having requested an accommodation she fails to identify.

(Compl., D.I. 1, at Counts II and III.)  Even were Plaintiff able to clear the substantial

hurdle of proving a constructive discharge, the undisputed facts establish, as a matter of

law, that Plaintiff was not "disabled," that she was not "otherwise qualified" for the

Shipper/Receiver position, and that, even had she been an otherwise qualified individual

with a disability, VWR provided her all the "accommodation" the law would have

required and more.

"[T]o establish a prima facie case under the ADA, the plaintiff must show:

'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified

to perform the essential functions of the job, with or without reasonable accommodations

by the employer; and (3) he has suffered an otherwise adverse employment decision as a

result of discrimination.'"  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir.

1999) (quoting Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998) (citing

Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996))).

Here, Plaintiff can prove none of these three essential elements.

### 1.    *Plaintiff Was Not "Disabled."*

Plaintiff's work restrictions were insufficient as a matter of law to constitute a "disability" under the ADA.

A person has a disability if he has a physical or mental impairment that substantially limits one or more of the major life activities of such individual.  42 U.S.C. § 12102(2).  Consideration of a plaintiff's claim of a qualifying disability proceeds in three steps:  "First, [the court] consider[s] whether respondent's [claimed impairment] was a physical impairment.  Second, [the court] identif[ies] the life activity upon which [plaintiff] relies . . . .  Third, tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity."  Bragdon v. Abbott, 524 U.S. 624, 631 (1998).[6]

Plaintiff's claimed disability is an SI joint dysfunction diagnosed in November 2002.  (Pl.'s Dep. Tr., Ex. 1, at 9-10.)  Based on that condition, at various times, Plaintiff's health care providers prescribed certain temporary lifting restrictions:

1.    May 20, 2002:  Dr. Dear prescribed a 7-day restriction of no bending or lifting over 5 pounds;

2.    October 28:  Chiropractor Guy Pistilli suggested Plaintiff not lift over 10 pounds; and

3.    February 4, 2003:  Dr. Dear prescribed a 30-day restriction of no bending and no lifting over 5 pounds.

(Pl.'s Dep. Tr., Ex. 2, at 104, 127-28, 157-58.)

---

[6] Plaintiff fails to identify the major life activity she claims was substantially limited by her claimed impairment as Bragdon requires.

The case law is uniform that temporary lifting restrictions of five pounds or more are insufficient, as a matter of law, to constitute a disability. See Mitchell v. Henderson, No. 99-1205, 2000 U.S. App. LEXIS 274, at *8 (10th Cir. Jan. 7, 2000) (temporary 5-pound lifting restriction insufficient); Rondon v. Wal-Mart, Inc., 1998 U.S. Dist. LEXIS 16137 (N.D. Cal. Oct. 8, 1998) (temporary 5-pound lifting restriction insufficient); Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (5-10 pound lifting restriction insufficient); Cella v. Villanova Univ., No. 03-1749, 2004 U.S. App. LEXIS 21740, at *4 (3d Cir. Pa. Oct. 19, 2004) (10-pound lifting restriction insufficient); Marinelli v. City of Philadelphia, 216 F.3d 354, 364 (3d Cir. 2000) (10-pound lifting restriction insufficient); Glozman v. Retail, Wholesale & Chain Store Food Employees Union, Local 338, 204 F. Supp. 2d 615, 621 (S.D.N.Y. 2002) ("The inability to lift heavy objects [or to sit or stand for an extended duration] does not constitute a disability under the ADA.").[7]

Plaintiff, as a matter of law, was not disabled.

### 2.    *Plaintiff Was Not "Otherwise Qualified" To Perform The Shipper/Receiver Position.*

Even assuming Plaintiff was "disabled" within the meaning of the law, she was not "otherwise qualified."  To satisfy this burden, Plaintiff must prove that she was

---

[7] See also Gerdes v. Swift-Eckrich, 949 F. Supp. 1386, 1400 n.5 (N.D. Iowa 1996) (10 pounds), aff'd, 125 F.3d 634 (8th Cir. 1997); Piascyk v. City of New Haven, 64 F. Supp. 2d 19, 29-31 (D.Conn. 1999) (15 pounds), aff'd without op., 216 F.3d 1072 (2nd Cir. 2000); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2nd Cir. 1998) (10-20 pounds); Helfter v. United Parcel Service, Inc., 115 F.3d 613, 617-18 (8th Cir. 1997) (10-20 pounds); Wooten v. Farmland Foods, 58 F.3d 382, 384-86 (8th Cir. 1995) (10-20 pounds); McKay v. Toyota Motor Mfg., USA, Inc., 110 F.3d 369, 373 (6th Cir. 1997) (20 pounds).  Accord Snow v. Ridgeview Medical Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) ("[A] general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA.").

able to perform the essential functions of her Shipper/Receiver position with or without reasonable accommodation. <u>See</u> <u>Gaul</u>, 134 F.3d at 580. Here, Plaintiff admits that she has been continuously unable to perform these duties since October or November 2002. (Pl.'s Dep. Tr., Ex. 1, at 31-32, 149-50.) This admission is fatal to her ADA claims. <u>See</u> <u>Gaul</u>, 134 F.3d at 580.

### 3.    *Plaintiff Was Not Actually Or Constructively Discharged.*

Plaintiff cannot satisfy the third essential element of her <u>prima facie</u> case because VWR did not discharge her and she has no viable constructive discharge claim. (<u>See</u> Part VI.B <u>supra</u>.)

### 4.    *VWR Provided Plaintiff With More "Accommodation" Than The ADA Would Have Required Had Plaintiff Had A Qualifying Disability.*

Because Plaintiff did not have a qualifying disability and was not otherwise qualified to perform her Shipper/Receiver position, she was not entitled to any accommodation under the law. <u>See</u> 42 U.S.C. § 12112 (b)(5)(A) (accommodation required only for "known physical or mental limitations of an otherwise qualified individual with a disability"). Were Plaintiff able to surmount these hurdles and prove she had a "disability" and was "otherwise qualified," she would still bear the burden to prove, "as part of her burden of persuasion, that an effective accommodation exist[ed] that would [have] render[ed] her otherwise qualified." <u>Walton v. Mental Health Ass'n</u>, 168 F.3d 661, 670 (3d Cir. 1999) (quoting <u>Borkowski v. Valley Cent. Sch. Dist.</u>, 63 F.3d 131, 139 (2d Cir. 1995)). Plaintiff has identified none.

Plaintiff testified that she has been continuously unable to perform the functions of her Shipper/Receiver position since October or November 2002. (Pl.'s Dep. Tr., Ex. 1, at 31-32, 149-50.) The essential functions of that job required Plaintiff

consistently to lift up to 50 pounds, carry items weighing up to 50 pounds for up to 20 feet, stand for extended periods, bend, squat and kneel.  (Pl.'s Dep. Tr., Ex. 1, at 17-24.) Except to excuse her completely from those essential functions, there was no way Plaintiff could continue to perform in the position of Shipper/Receiver under the February 3, 2003 restriction that she do no bending at all or lift anything over 5 pounds. (Pl.'s Dep. Tr., Ex. 1, at 157-158.)  The law does not require an employer to reallocate or eliminate the essential functions of a job to accommodate a disabled employee.  Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995)).  Nor must an employer create a new position or "create a permanent position out of a temporary one as an accommodation."  Id. at 1114.  The cases are in accord with the EEOC's position:  "An employer . . . is not required to reallocate essential functions."  29 C.F.R. § 1630.2(o) App.

Here, VWR did much more by way of "accommodation" of Plaintiff's personal circumstances than the law requires of an employer faced with an actual qualifying disability of one of its workers.  It temporarily reallocated essential functions of Plaintiff's position to her supervisor and co-worker (for longer than her physician had suggested) (Pl.'s Dep. Tr., Ex. 1, at 105-08); it reached out and provided her with a temporary clerical assignment (Pl.'s Dep. Tr., Ex. 1, at 140-41); and, when that assignment ended, it allowed her to perform some limited duties that were consistent with her restrictions (Pl.'s Dep. Tr., Ex. 1, at 144-45).  And, when Plaintiff was unable to perform any of her Shipper/Receiver duties, it granted her extended leaves of absence. See Parts V.E and V.G supra.  If VWR had an obligation to accommodate Plaintiff's condition, its treatment of her more than satisfied that obligation.

18

**D.** **PLAINTIFF HAS NO CLAIM UNDER THE DELAWARE WORKERS'
COMPENSATION STATUTE BECAUSE SHE CEASED TO BE QUALIFIED TO
PERFORM THE DUTIES OF HER EMPLOYMENT IN OCTOBER OR
NOVEMBER OF 2002.**

Plaintiff also claims that VWR constructively discharged her because she

filed a worker's compensation claim.  (Compl., D.I. 1, at Count I.)  Plaintiff cannot, for

the reasons set forth in Part VI.B, supra, state a claim of constructive discharge.  Nor can

she recover under the Delaware Workers' Compensation Statute even if she could.

Although the statute prohibits discrimination against an employee because

he or she has claimed workers' compensation benefits from the employer, and provides

for restoration and damages, the statute further provides that, "if the employee shall cease

to be qualified to perform the duties of employment, the employee shall not be entitled to

such restoration and compensation."  19 Del. C. § 2365.  Plaintiff's admission that she

has been continuously unable to perform the duties of her position since October or

November of 2002; namely, that she was not "qualified," precludes Plaintiff's claim

under the Delaware Workers' Compensation Statute.  (Pl.'s Dep. Tr., Ex. 1, at 31-32,

149-50.)

**E.** **PLAINTIFF'S WRONGFUL DISCHARGE CLAIM IS BOTH PRECLUDED BY
THE DELAWARE'S WORKERS' COMPENSATION STATUTE AND
INSUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED.**

Plaintiff alleges that VWR constructively discharged her to "cover up" the

timing of its submission of a report of her alleged workplace injury.[8]  (Compl., D.I. 1, at

Count IV.)  This claim fails for at least four reasons.

---

[8] The common law claim of wrongful discharge is limited to one of four exclusive
categories:  (1) where the termination violates public policy and no other remedial
scheme exists; (2) where the employer misrepresented an important fact and the

(continued…)

First, Plaintiff cannot prove a constructive discharge.  (<u>See</u> Part VI.B <u>supra</u>.)

Second, even if she could, the Delaware Workers' Compensation Statute's remedies are exclusive and preclude Plaintiff's common-law wrongful termination claim. <u>See</u> <u>Schuster v. Derocili</u>, 775 A.2d 1029, 1038 (Del. 2001).

Third, Plaintiff's wrongful discharge claim fits into none of the <u>Pressman</u> categories.  (<u>See</u> <u>Pressmann</u> categories set forth in footnote 9 <u>supra</u>.)  She does not claim that VWR falsified or manipulated records to create fictitious grounds for termination. Her allegations of "cover up" or falsification are limited to vacation records and an accident report.

And, finally, whatever Plaintiff may otherwise claim, she retracted her allegation of any "cover up" or "falsifi[cation]."  She testified that there was none; that Mr. Steed, the person she claimed had engaged in such conduct, was "honest" and she had no reason to doubt his honesty;  that Mr. Steed did not falsify anything; and,  that the term "cover-up" used in the Complaint was "ill-chosen."  (Pl.'s Dep. Tr., Ex. 1, at 57, 75, 82-86.)

---

(..continued)
employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination.  <u>See</u> <u>E.I. duPont de Nemours & Co. v. Pressman</u>, 679 A.2d 436, 442-44 (Del. 1996).

## VII.    CONCLUSION

Plaintiff recanted in her deposition every material allegation in the Complaint and provided further testimony that together leave no triable issue and foreclose all of her claims.

Defendant respectfully asks that the Court enter judgment in its favor and against Plaintiff on all counts in the Complaint, tax costs against Plaintiff, and grant such other and further relief as the Court deems proper and just.

Dated:  April 15, 2005

s/ David P. Primack
David P. Primack (DE 4449)
Drinker Biddle & Reath LLP
1100 N. Market Street, Suite 1000
Wilmington, Delaware 19801-1254
Telephone:  302-467-4224
Fax:  302-467-4201
Counsel for Defendant

Of Counsel:

Kathryn H. Levering
Admitted pro hac vice
James G. Fannon
Admitted pro hac vice
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103-6996

Counsel for Defendant