FLORENCE CHU, Plaintiff v. SAMUEL GELTMAN & CO., Defendant
CIVIL ACTION NO. 92-4480

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OFPENNSYLVANIA

1993 U.S. Dist. LEXIS 17473

November 17, 1993, Decided

COUNSEL: [*1] For FLORENCE CHU, PLAINTIFF: RICHARD J. ORLOSKI, ORLOSKI & HINGA, ALLENTOWN, PA, ROBERT PANDALEON, ORLOSKI & HINGA, ALLENTOWN, PA.

For SAMUEL GELTMAN AND COMPANY, INC. d/b/a TREMONT APARTMENTS, DEFENDANT: SANDRA A. GIRIFALCO, JOHN F. LICARI, STRADLEY, RONON, STEVENS & YOUNG, PHILA, PA.

JUDGES: Troutman

OPINIONBY: E. MAC TROUTMAN

OPINION:
TROUTMAN, S.J.

MEMORANDUM

Plaintiff filed a one count complaint seeking relief for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 261 et seq.. Defendant, Samuel Geltman & Co. ("Geltman"), answered the complaint and filed a counterclaim for attorneys fees. Subsequently, Geltman filed the motion for summary judgment currently before the Court. We have jurisdiction pursuant to 28 U.S.C.A. § 1331. For the reasons which follow, we will grant the motion for summary judgment.

I. BACKGROUND.

Geltman manages several apartment complexes in the Allentown, Pennsylvania, area. Plaintiff was employed by Geltman as a Rental Agent at the Tremont Apartments beginning on March 26, 1987. (Complaint at P 5.) During this time, she was one of two part-time rental agents. [*2] (Brief in Support of Motion for Summary Judgment (Doc. #10) at 2.) During the relevant time frame, plaintiff was in her early to mid-sixties. (Complaint at P 7.) The other part-time Rental Agent, Irene Steiner, was in her late sixties.

Because of certain problems at the Tremont complex, Geltman decided to replace the two part-time Rental Agents with one full-time Rental Manager. (Brief in Support at 2, citing Exh. "B", Statement of Nancy Geltman ("Geltman Statement"); Exh. "C", Statement of Thomas Kasten ("Kasten Statement").) On October 4, 1991, Tom Kasten, who is Geltman's property manager, asked Wanda Hanna, then 45 years of age and working part-time at another of Geltman's complexes, to be the full-time Rental Manager at the Tremont Apartments. Ms. Hanna agreed, and would start in late November after her vacation. (Id., citing Statement of W. Hanna., Exh. "E".)

On November 2, 1991, Geltman placed an ad in a local newspaper for Ms. Hanna's replacement. (Id., citing Geltman Statement, Exh. "B", Exh. "C".) Dorothy Davis, 62 or 63 years of age, was hired. (Id. at 2-3, citing Geltman Statement, Exh. "B".)

On November 27, 1991, Tom Kasten, who was also Plaintiff's[*3] superior, overheard, and later participated in, a conversation between Plaintiff and Bill Skerlock, manager of the Tremont complex, (Complaint at P 11), and thereby became aware of Plaintiff's age. At one point, Kasten became angry and, as quoted in Plaintiff's unverified complaint without any supporting citation to source, allegedly stated, inter alia, "When its time to retire, they should retire, they should get off the job, let a younger person have that job." (Complaint at P 18.)

One week later, Kasten told Plaintiff that because Geltman would henceforth retain only Rental Agents who held a Pennsylvania Real Estate license, she would be terminated since she did not have such a license. (Complaint at P 20. See also Brief in Support at 3 ("Company policy required that all full-time managers have real estate licenses.").) Kasten told Plaintiff that Geltman could be fined for having an unlicensed agent show apartments. (Complaint at P 21.) Plaintiff's employment was terminated on December 11, 1991.

EXHIBIT 9

In the following Spring, Geltman advertised for a Rental Agent for the Allen Gardens complex in April, 1992. The advertisement did not state any licensing requirement. (Compliant[*4] at P 23.) A friend of Plaintiff called about the position and was told that a license holder would be preferred but that a license would not be necessary. (Complaint at P 24.) Upon learning of this, Plaintiff concluded that the license requirement was a sham. The advertisement which apparently prompted the phone call was, however, for a part-time agent position. a position for which Geltman did not require a real estate license. (Motion for Summary Judgment (Doc. #10) Exh. "B", Geltman Statement, at P 5.)

Plaintiff filed complaints with the Pennsylvania Human Relations Commission and with the Equal Employment Opportunity Commission. The record does not state what, if any. action the commissions took with respect to Plaintiff's complaints. Subsequently, Plaintiff filed this action alleging, in her single count complaint, that "[Geltman] terminated Plaintiff solely based upon Plaintiff's age." (Complaint at P 26.)

## II. STANDARD OF REVIEW.

Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P 56(c).*

To defeat summary judgment, an issue of fact in dispute must be both [*5] genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* The Court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Tigg Corp. v. Dow Corning Corp. 822 F.2d 358 (3d Cir. 1987).*

In order to obtain a summary judgment, the proponent of the motion has the initial burden of identifying evidence, from the sources enumerated in Rule 56, which demonstrates the absence of a genuine issue of material fact. When confronted by a properly supported motion for summary judgment, the opposing party is required to produce, from the same sources, some contrary evidence which could support a favorable verdict.

Where the non-movant, usually the plaintiff, bears the burden of proof on the issue which is the subject of the summary judgment motion and is confronted by the defendant's[*6] argument that the facts established

through the discovery process do not support the claim, that party must identify evidence of record sufficient to establish every element essential to the claim. *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141 (3d Cir. 1987).*

In order to defeat summary judgment, the party opposing the motion may not rest upon mere denials of the facts identified by the movant as supportive of its position, nor upon the vague and amorphous argument that the record somewhere contains facts sufficient to support its claims, *Childers v. Joseph, 842 F.2d 689 (3d Cir. 1987),* nor upon substituting "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S. Ct. 3177, , 111 L. Ed. 2d 695, 716 (1990).* Instead, the party resisting the motion for summary judgment is required [*7] to specifically identify the evidence of record which supports the claim and upon which a verdict in its favor may be based. n1 Id.; Childers.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n1 Neither party, of course, may rely upon inadmissible evidence. A natural extension of our determination of whether there are genuine disputes of material fact is to determine the admissibility and relevance of proffered evidence, if necessary.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

If the movant succeeds in demonstrating that there are no genuine issues of material fact in dispute, the Court must then be satisfied that the moving party is entitled to judgment as a matter of law. If the non-moving party fails to show evidence to support an essential element of the claim, the movant is entitled to judgment as a matter of law since the non-moving party would have failed to meet the burden of proof. Lujan, 497 U.S. at , 110 S. Ct. at , 111 L. Ed. 2d at 714.

## III. DISCUSSION.

Analysis of an ADEA claim employs a shifting of burdens similar to the analysis of a Title VII claim. The

plaintiff must[*8] first establish a prima facie case by a preponderance of the evidence. Upon such a showing, there is a presumption of discrimination and the burden then shifts to the defendant to proffer some legitimate nondiscriminatory reason for the plaintiff's termination. If the defendant shows such a reason, the presumption drops from the case and the burden returns to the plaintiff who must thereupon show that the defendant's proffered reason was a mere pretext for discrimination and not worthy of credence. See *Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); Turner v. Schering-Plough Corp., 901 F.2d 335, 341-42 (3d Cir. 1990).*

Our task on summary judgment is to determine whether Plaintiff has shown a prima facie case, whether Defendant has offered a legitimate non-discriminatory business reason, and whether Plaintiff has offered sufficient evidence to show that the proffered reason is not worthy of credence, that it was pretextual.

Regardless whether the proffered reason is worthy or not worthy of credence, or is even believed to[*9] be a lie, at all times, plaintiff bears the ultimate burden of persuading the trier of fact that age was the determinative factor in the termination decision. *St. Mary's Honor Center v. Hicks, 509 U.S.    113 S. Ct. 1742, 125 L. Ed. 2d 407 (1993).* A disbelief of the proffered reason, together with the prima facie case elements, however, may permit the inference of the ultimate fact of discrimination. Id. at 418. Thus, a plaintiff may defeat summary judgment by identifying evidence of record which discredits the proffered reason or tends to show the ultimate fact of discrimination. *Celotex Corp., supra; Equimark Commercial Finance Co., supra.* In either case, whether directly attacking the proffered reason or indirectly by showing discrimination, such an evidentiary showing would establish that reasonable minds could differ on the question of whether age was the determinative factor for the employment decision. It would then remain, of course, for a plaintiff to still prove the ultimate fact of discrimination at trial.

On summary judgment in an ADEA action, [*10] we must usually decide whether a plaintiff can show a prima facie case and/or evidence of pretext. The nature of discrimination cases means that the issue on summary judgment will be the quantity and quality of plaintiff's evidence, i.e., whether Plaintiff has identified evidence of record which is competent, material, and sufficient to show a genuine issue of material fact. Although such issues involved on summary judgment are subtle and factual, "we do not infer from the nature of discrimination suits that a jury determination is required in every case." *Billet v. CIGNA Corp., 940 F.2d 812, 828*

*(3d Cir. 1991).* The evidence in an age discrimination action

must be enough to support a reasonable inference that the reasons given for the employment decision are pretextual. Merely reciting that age was the reason for the decision does not make it so. [citations omitted]

Thus we, along with numerous other courts, have stated that summary dispositions can be applicable in employment age discrimination cases. [citations omitted]

*Billet, 940 F.2d at 816* (affirming directed verdict for employer after jury was [*11]deadlocked) (emphasis in original).

We conclude that Plaintiff has failed to show sufficient competent and material evidence of pretext.

A. Plaintiff's prima facie Case.

To establish a prima facie case of age discrimination, a plaintiff must be able to show each of the following: (1) plaintiff belongs to the protected class, that is, over the age of forty; (2) plaintiff was qualified for the job; (3) plaintiff was terminated from the job; and (4) plaintiff was replaced by a person sufficiently younger to permit an inference of age discrimination. St. Mary's Honor Center, 509 U.S. at    , 113 S. Ct. at    , 125 L. Ed. 2d at 415-16; *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Turner, 901 F.2d at 342.* We conclude that Plaintiff has failed to meet her burden of showing a prima facie case, in particular, that she was qualified for the position of full-time Rental Manager. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n2 Age discrimination cases come in a few varieties, generally: termination, failure to promote, and reduction-in-force ("RIF"). Although we evaluate plaintiff's prima facie case under the termination variety, she would fail to meet a prima facie case under any of the three listed. Since two part-time positions, one of which was held by plaintiff, were consolidated into one full-time position, it is arguable that plaintiff was a RIF casualty. Likewise, it is arguable that plaintiff should have been "promoted" to the full-time position. Under any scenario, we would conclude that plaintiff was not qualified for the position.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -
- - - -

**[*12]**

Geltman decided to eliminate the two part-time Rental Agent positions in favor of having one new full-time Rental Manager. A qualification for the new position was having a valid Pennsylvania real estate license. Plaintiff did not have a valid Pennsylvania real estate license while the person hired for the position, Ms. Hanna, did. In addition, the unrefuted evidence shows that Plaintiff was not performing satisfactorily in the part-time position and that she was not well qualified for the full-time position.

Although we conclude that Plaintiff was not qualified for the new position created by Geltman, it is not on this basis alone that we will grant summary judgment. We recognize that the creation of a new position along with the new qualifications might, in certain instances, be self-serving. We will, therefore, analyze Geltman's proffered reason and Plaintiff's evidence of pretext.

B. Defendant's Proffered Legitimate Nondiscriminatory Reason.

Geltman states that during 1991, Tremont Apartments had an unusually high vacancy and turnover rate. In addition, the office was not well run. Management was having problems with Plaintiff, such as, inter alia, her failure to coordinate[*13] rentals with the maintenance staff so that repair and replacement of items could be made as scheduled thus allowing tenants to move into a ready unit. (See generally Motion for Summary Judgment Exh. "B", Geltman Statement; Exh. "C", Kasten statement; Exh. "D", Statement of William Skerlock.)

Nancy Geltman, President of Defendant Samuel Geltman & Co., decided the complex should be run in a more professional manner. (Motion for Summary Judgment Exh. "B", Geltman Statement at P 3.) Geltman decided to replace the two part-time positions with one full-time manager. (Id.) Geltman's policy required that full-time managers have a real estate license. (Id. at P 5.) Ms. Hanna, the new full-time Rental Manager at Tremont Apartments, had been performing very well for Geltman during four and one-half years at another complex. Geltman believed that Ms. Hanna was very well qualified for the position. (Motion for Summary Judgment Exh. "C", Kasten Statement at P 8.)

We conclude that Geltman has offered a legitimate non-discriminatory business reason for terminating Plaintiff's part-time position and for not retaining her in the full-time position. The presumption of age discrimination [*14] is thus removed. The burden now shifts back to Plaintiff to show why Defendant's reason is mere pretext and not worthy of credence.

C. Analysis of Plaintiff's Evidence of Pretext.

Geltman has offered a legitimate reason for terminating Plaintiff and, therefore, met its burden of production. Geltman eliminated Plaintiff's position and did not retain her in the newly created position because she did not have a real estate license and was, generally, not qualified to be the full-time Rental Manager. Having proffered such a reason, the presumption of discrimination drops from the case and Plaintiff, in order to survive summary judgment, must show some evidence to cast doubt upon the proffered reason.

Plaintiff may show evidence of pretext by showing that the creation of the new position and its requirements was itself the pretextual reason for terminating Plaintiff. That is, Plaintiff may defeat summary judgment by producing evidence that Geltman created the new position and created new requirements which plaintiff could not meet, in order to hide the fact that it wanted to, and did, terminate plaintiff solely because of her age.

Plaintiff has not shown that the license requirement[*15] was superficial or irrational. Whether or not Pennsylvania law requires a real estate license, (see Brief in Opposition at 15-16), Nancy Geltman states that it was Defendant's policy that full-time rental managers should have a real estate license. Plaintiff attempts to show that the license requirement was a sham by submitting as evidence a letter from Ruth Webb (id. Exh. "G"), the competence and admissability of which has been challenged by Geltman. This unauthenticated letter states that Ruth Webb called about an advertisement for a Rental Agent in the Allentown Morning Call on April 6, 1992, about four months after Plaintiff was terminated. A copy of the asserted advertisement is attached to the letter. The letter states that the woman who answered told Ruth Webb that a real estate license would be preferred but not required.

Geltman responds by stating that the advertisement, assuming that the advertisement is for Allen Gardens, a Geltman complex and not one of the two other "rental agent" advertisements appearing in Plaintiff's Exh. H, is for a part-time position. Geltman policy does not require a real estate license for part-time positions. Plaintiff has provided no[*16] other evidence which might indicate

that the license requirement for full-time Rental Managers is a sham, irrational, or discriminatory.

Plaintiff has not offered any evidence against Geltman's assertion that Plaintiff was not otherwise well qualified for the full-time position. Plaintiff argues that this assertion is post-termination justification and that it should not be considered. Plaintiff argues that Geltman should be held only to the statements made to Plaintiff at the time of termination, i.e., that a real estate license is required. We disagree.

We are aware of no requirement that an employer in Pennsylvania must offer a reason(s) for terminating an employee. It follows that an employer need not inform an employee of all the possible reasons it may have for terminating an employee. An employer need not anticipate all possible issues which might be raised in a later lawsuit, nor is an employer prohibited from sparing the employee the possible hurt that may be caused by its view of the employee's work quality.

Geltman's post-termination statements, that Plaintiff was not performing up to satisfaction, are offered under penalty for falsification to authorities, 18 Pa. Con. [*17] Stat. Ann. § 4904. Plaintiff has offered no testimonial or other evidence from the sources listed in *Fed. R. Civ. P. 56* to contradict these statements. Plaintiff only argues that the sworn statements are contrary to unsworn and "courtesy" statements, e.g., letters of reference. Such evidence is insufficient to attack Geltman's proffered reasons, whether of the license requirement or of Plaintiff not performing as expected, on summary judgment.

Plaintiff has failed to show sufficient evidence that the proffered reason is not entitled to credence. Plaintiff has not shown any evidence which would tend to cast doubt on the stated reasons for creating a full-time Rental Manager job. Plaintiff has shown no evidence that the change in positions was pretextual or discriminatory. Geltman has provided legitimate reasons for altering the way it managed the apartment complex and it has offered evidence tending to show that the decision to do so occurred before the alleged discriminatory termination. (Motion for Summary Judgment Exh. "B", "C", Geltman Statement (discussing newspaper advertisement for Ms. Hanna's replacement).) Plaintiff simply has failed to offer any competent and material[*18] evidence and thus failed to meet her burden on summary judgment. n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n3 Plaintiff's Brief in Opposition at 2 n.1 states that plaintiff was then out of the country and unable to swear an affidavit in opposition to summary judgment. Plaintiff offered a copy of her notarized statement to the Pennsylvania Human Relations Commission which would "be reincorporated into an Affidavit in Opposition to Defendant's Motion for Summary Judgment." Without examining the assertion that a person outside the country is not able, through the mails and local authorities elsewhere, to provide a statement sufficient for *Fed. R. Civ. P. 56* purposes, more than enough time has elapsed since plaintiff filed her brief in opposition to file the promised affidavit, yet none was ever filed. Further, we have reviewed her notarized statement and find nothing therein which would alter our decision.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

IV. CONCLUSION.

Plaintiff has failed to meet her evidentiary burden on summary judgment. Plaintiff has not shown that she was qualified for the position. [*19] Nor has she shown that the qualification was irrational and thus, perhaps, pretextual. Nor has she shown any evidence tending to show Geltman's proffered reasons were pretextual or not worthy of credence, and thereby showing that reasonable minds could differ on whether age was a motivating factor in the decision to terminate her. There are, therefore, no genuine disputes of material fact and Geltman is entitled to judgment as a matter of law. Hence, an appropriate order follows.

TROUTMAN, S.J.

ORDER

AND NOW, this 17th day of November, 1993, upon consideration of the Motion of Defendant Samuel Geltman & Co. for Summary Judgment (Doc. #10) and the response thereto, IT IS ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that Defendant's Counterclaim is DISMISSED without prejudice.

IT IS FURTHER ORDERED that judgment is entered in favor of Defendant and against Plaintiff.

E. Mac Troutman, S.J.

SHIRLEY SELDOMRIDGE, Plaintiff, v. UNI-MARTS, INC.,Defendant.
Civil Action No. 99-496 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2001 U.S. Dist. LEXIS 9491

July 10, 2001, Decided

DISPOSITION: [*1] Uni-Marts' Motion for Summary Judgment GRANTED. Summary Judgment ENTERED in favor of Uni-Marts and against Seldomridge on all claims in complaint.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff former employee sued defendant employer, alleging that she experienced a hostile work environment was subsequently constructively discharged as a result of indecent exposure by her supervisor. The employer moved for summary judgment.

OVERVIEW: The employee's supervisor appeared completely naked before the employee during work hours, which caused her psychological harm. The employer granted a leave of absence to the employee and subsequently terminated the supervisor. Upon the employee's return to work, the employee alleged that she was subjected to comments concerning the incident from a co-worker and customers, to the extent that a hostile work environment was created which forced the employee to resign. The court first held that, although offensive and inappropriate, the brief exposure incident was not so severe that it altered the terms and conditions of her employment, and thus did not create a hostile work environment. Further, the teasing and comments from the co-worker and customers did not constitute actionable sexual harassment since it was not based on the employee's gender and, in any event, the employee failed to show that the employer knew or should have known of such conduct. For the same reasons, the employee's resignation did not constitute a constructive discharge, absent evidence that the employer intentionally made her working conditions intolerable.

OUTCOME: The employer's motion for summary judgment was granted.

LexisNexis(R) Headnotes

COUNSEL: For SHIRLEY SELDOMRIDGE, plaintiff: Thomas S. Neuberger, Thomas S. Neuberger, P.A., Wilmington, DE.

For SHIRLEY SELDOMRIDGE, plaintiff: David Staats, Law Offices of David Staats, P.A., Wilmington, DE.

For UNI-MARTS INC., defendant: Michael F. Bonkowski, Saul Ewing LLP, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION: MEMORANDUM AND ORDER

I. INTRODUCTION

On August 3, 1999, Shirley Seldomridge ("Seldomridge") filed this employment discrimination lawsuit against her former employer, Uni-Marts, Inc. ("Uni-Marts"), under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* et seq. (1994), and the Civil Rights Act of 1991. *42 U.S.C. § 1981*(a) (1994). In her complaint, Seldomridge alleges that she was sexually harassed when her supervisor stood naked before her as she was working one afternoon. As a result, Seldomridge claims that she experienced a hostile working environment and was subsequently constructively[*2] discharged from her position at Uni-Marts. Presently before the court is Uni-Marts' motion for summary judgment. After reviewing the record in the light most favorable to Seldomridge, the court concludes that she cannot establish her claims as a matter of law, and will therefore, grant Uni-Mart's motion for summary judgment.

The following sections explain the reasons for the court's decision more thoroughly.

II. FACTS

Shirley Seldomridge is a married woman who once worked at a Uni-Marts convenience store in Delaware. Seldomridge had been employed at Uni-Marts from December 5, 1997 until on or about February 11, 1998. On Friday, January 16, 1998, Seldomridge was working at the store with her supervisor, Robert A. Walsh ("Walsh"). At some time between 1 and 2 p.m. that day, Walsh told Seldomridge that he was going to go to the bathroom, but when he came out, he would be wearing "nothing but a cigarette." At first, Seldomridge thought her manager was joking, and thus, she paid his comment no mind. However, a few minutes later, she looked up and saw Walsh standing in the doorway to the storage area completely naked and "posing" approximately 36 steps away from where she was [*3]standing. According to Seldomridge, she glanced at Walsh for less than a second, promptly looked away, and stated, "Oh, my God." Walsh then ran into the bathroom of the workplace and stayed there for as long as Seldomridge remained in the store.

About ten to fifteen minutes after the incident, Seldomridge called her husband to come and pick her up from the store. Within five minutes, he arrived and took her home. She yelled to Walsh that she was leaving and that she would not be back. Later that afternoon at around three o'clock, Seldomridge says that Walsh called her at home, but she would not talk to him.

On the day of the incident, Seldomridge referred to her employee handbook and telephoned a toll-free number at the Uni-Marts headquarters to complain about the incident. She spoke to someone, described what had happened to her, and was told she would be contacted. She also called this number after Walsh called her at home. There is evidence in the record that Seldomridge received a call from Uni-Marts offices at 4:25 that afternoon.

Seldomridge also approached a New Castle County Police Officer and advised him that Walsh had "exposed his genitals" to her. As a result, Walsh was[*4] charged with Indecent Exposure in The Second Degree in violation of Section 764(a) of Title 11 of the Delaware Code. Walsh pled guilty to the charge in March of 1998. Seldomridge further alleges that she was so upset by the incident that she consulted with a psychiatrist on the very next business day. Seldomridge states that she consulted the psychiatrist about the incident one time. The record indicates that Seldomridge had been consulting this psychiatrist since 1995 or 1996.

A. Uni-Marts' Conduct After Incident and Sexual Harassment Policy

As a result of Seldomridge's call to the toll-free number, a Uni-Marts attorney and a Uni-Marts regional manager contacted John C. Minchak ("Minchak"), a group supervisor at Uni-Marts responsible for monitoring the day-to-day operations of a group of Uni-Marts' stores. Minchak was advised to give Seldomridge time off with pay, and told to suspend Walsh until Uni-Marts completed its investigation.

Minchak attempted to contact Walsh on the evening of the incident, but did not have a chance to speak to him until some time between six and seven the next morning. At this time, Walsh admitted his actions. As a result, Minchak immediately terminated[*5] Walsh's employment with Uni-Marts.

Uni-Marts contacted Seldomridge to inform her that Walsh had been fired and that she could take time off with pay. Although it is not clear from the record, it appears that Seldomridge returned to work approximately one to two weeks after the incident. In her deposition, Seldomridge acknowledged that Uni-Marts acted appropriately in terminating Walsh. There is no evidence in the record that Walsh contacted her after his termination.

It is undisputed that Uni-Marts had a sexual harassment and discrimination policy that was communicated to Seldomridge when she began her employment. This policy was communicated to employees through the employee handbook and a policy and procedures letter provided to each employee when hired. Seldomridge acknowledges that she received, read, and understood the company's policies by signing the acknowledgment page of the employee handbook and signing and initialing the company's policy and procedures letter. Seldomridge also acknowledges that she "called the sexual harassment number in that handbook." Thus, it is not disputed that she used the sexual harassment policy when she called the Grievance Committee to report[*6] Walsh's conduct on January 16, 1998.

The policy in effect during Seldomridge's employment was originally drafted in May of 1987. It was amended in October of 1991. The policy seeks to prevent sexual harassment and discrimination in the workplace. It clearly states that sexual harassment or discrimination will not be tolerated by Uni-Marts. The policy also sets forth a process for employees to complain and seek redress from the company in the event that an employee believes he or she is the victim of sexual harassment or is having any type of difficulty in the workplace. Specifically, the policy provides for a Grievance Committee to investigate and remedy any workplace problems.

2001 U.S. Dist. LEXIS 9491, *

B. Alleged Hostile Work Environment and Constructive Discharge

Before the incident, Seldomridge stated that Walsh made her uncomfortable at work by saying that he thought she was pretty, he would like to "rock her world," and by making other "stupid, off-the wall comments." The record indicates that Seldomridge never filed a grievance against Walsh for making any of these comments prior to the incident. As Seldomridge's supervisor, Walsh had the power to: set her work schedule, fire her, recommend an increase[*7] or decrease in her wages, undertake or recommend tangible employment decisions affecting her, and direct her daily activities. There is no evidence in the record that Walsh made any negative employment decisions against Seldomridge.

After the incident, Seldomridge continued to work for Uni-Marts for approximately one month after Walsh's termination. During this time period, she alleges that she was subjected to comments by customers and a co-worker named Teddy n1 about the incident with Walsh. She stated that some customers would come into the store and make "really stupid comments." According to Seldomridge, Teddy would agree with customers by saying he did not believe that Walsh would do "anything like that." Besides Teddy, Seldomridge stated that other Uni-Marts' employees believed her. Seldomridge also stated that a customer who was friendly with Walsh did not believe her and that this customer did not want Seldomridge to wait on her. According to Seldomridge, this customer also made "smart comments behind her back." She also stated that one customer joked that he would take his clothes off, too. Seldomridge characterized the conduct by Teddy and certain customers as an "every[*8] day thing."

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n1 Although Seldomridge states that Teddy was "hostile" to her and would not speak to her, she does not provide any specific examples.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Seldomridge admits that she never used the phone number in the handbook to notify the Grievance Committee of the problems she was having in the store. She also admits that she never notified anyone in management at Uni-Marts about any problems in the store after the incident with Walsh. However, Seldomridge claims that the acting store manager at this time knew how she was being treated. There is no other evidence in the record supporting this claim. Within a month after returning to work, Walsh left her employment at Uni-Marts for another job at a place called the Eating Post.

C. Walsh's Employment At Uni-Marts

Walsh was hired by Uni-Marts on August 28, 1993. On his employment application, Walsh stated that the reason he left his prior position was "violation of company policy." Four months after being hired by Uni-marts, Walsh was promoted to store manager. On[*9] June 2, 1995, Walsh was promoted to supervisor. In connection with that promotion, Uni-Marts conducted a search of Walsh's driving record. The record showed a number of traffic violations. As a result, a Uni-Marts manager wrote a memo remarking that "His overall [sic] seems to indicate a disregard for rules and regulations." On March 22, 1996, Walsh was demoted from Supervisor to Store Manager.

Prior to exposing himself to Seldomridge, Walsh received a score of 188 out of a possible 200. This placed him in the top category of excellent, on a Management Personnel Performance Evaluation. The worksheet contains no evaluation criteria based on anti-discrimination or harassment prevention.

Prior to his employment with Uni-Marts, Walsh had a prior criminal history. n2 In 1995, an Information was filed by the Delaware Attorney General's Office charging Walsh with three counts of indecent exposure to girls under 16 years of age. The disposition of these charges is unavailable. In 1992, Walsh was charged with Felony Unlawful Sexual Contact Second Degree and Misdemeanor Indecent Exposure First Degree (indecent exposure to a girl under 16 years of age). He pled guilty to the misdemeanor charge[*10] and the Unlawful Sexual Contact charge was dismissed. In 1985, Walsh was charged with extortion. The disposition of this charge is unavailable. n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n2 This information was retrieved through a criminal records check done at Seldomridge's request by Robert Shannon, a licensed private investigator.

2001 U.S. Dist. LEXIS 9491, *

n3 A pre-trial services report made in the 1992 case, also indicates that 1) Walsh received six months of unsupervised probation for two counts of Lewdness in 1991, 2) Walsh pled guilty and was fined for six counts of Indecent Exposure in 1990, and 3) Walsh was arrested in 1986 for Indecent Exposure (disposition unavailable). Outside of the report, there is no other evidence documenting these charges. Thus, it is not clear where, or even if, these incidents occurred.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - -

D. Prior Sexual Harassment Claims Against Walsh

After the incident, Seldomridge learned of a prior sexual harassment allegation against Walsh from Tina Eastlake and her husband. On or about February 3, 1997, Tina Eastlake filed a complaint with the Delaware[*11] Department of Labor ("DDOL") alleging that Walsh sexually harassed her. Eastlake was a Uni-Marts employee who worked under Walsh. According to Eastlake the alleged harassment occurred on January 30, 1997. In her complaint, Eastlake stated that she and Walsh had enjoyed a casual dating relationship that ended in November of 1996. At that time, Eastlake informed Walsh that she did not wish to see him anymore. As a result of the relationship ending, Eastlake alleged that Walsh then subjected her to unfavorable treatment. In her complaint, Eastlake stated that she had advised Uni-Marts corporate officers of Walsh's conduct, however, she was not satisfied with their attempts to resolve the matter.

In response to Eastlake's allegations, Uni-Marts conducted its own investigation of her complaints. In a letter confirming a conversation with Eastlake on January 31, 1997, Amy Hunter ("Hunter"), Associate General Counsel for Uni-Marts, informed Eastlake that the grievance committee had met on several occasions regarding her grievance against Walsh. Hunter that stated that, "our final recommendation, after a thorough investigation is as follows. We would like to offer you a transfer to the Cecilton[*12] Store as an assistant manager. We understand that this will mean a longer commute for you. Therefore, we will also offer a fifty

cent per hour wage increase to cover transportation costs."

In a letter from Hunter to Eastlake dated February 10, 1997, Hunter stated "We have tried for several weeks to address your concerns and come to some type of resolution." Hunter again offered Eastlake a transfer to the Cecilton store. She also offered Eastlake a full-time position in the same store, at the same pay rate, for the 11 p.m. to 7 a.m. shift. Hunter then stated that if Eastlake did not respond by February 14, 1997, the company would assume that she had resigned. In a position statement to the DDOL, Uni-Marts claimed that Walsh "felt there were some problems with Tina's job performance. Specifically, certain tasks were being left undone and paperwork was left uncompleted." The Grievance committee felt that a change in managers would not be an acceptable solution because this would have called for others to be transferred as well.

The DDOL found "no reasonable cause to believe that Uni-Marts discriminated against Eastlake with respect to her sex and that reasonable cause does not exist[*13] to believe that Uni-Marts engaged in unlawful employment practices."

III. SUMMARY JUDGMENT STANDARD

The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Life Save Co., 206 F.3d 271, 278 (3d Cir. 2000); Knabe v. Boury Corp., 114 F.3d 407, 409 n.4 (3d Cir. 1997)* (both citing *Fed. R. Civ. P. 56(c)*). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, see *Charlton v. Paramus Board of Educ., 25 F.3d 194, 197 (3d Cir. 1997)*, and a fact is material if it could affect the outcome of the suit under governing law. Id. (citations omitted). For the non-moving party to prevail on a motion for summary judgment, the party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." [*14] See *Knabe v. Boury, 114 F.3d at 409 n.4; Newsome v. Administrative Office of the Courts of the State of New Jersey, 103 F. Supp. 2d 807, 815 (D.N.J. 2000)* (stating that a failure to prove an essential element of the nonmoving party's case necessarily renders all other facts immaterial).

In deciding a motion for summary judgment, "a court must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's

favor." *Knabe v. Bourty, 114 F.3d at 409 n.4* (citing *Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir.1994))*. Moreover, it is not the province of the court to weigh the evidence and to decide the case on its merits; rather, the court shall simply determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202.*

With these standards in mind, the court will turn to the substance of Uni-Marts' motion for summary judgment.

IV. DISCUSSION

In its briefing on the motion, Uni-Marts argues that it is entitled to summary judgment because Seldomridge cannot establish her claims for hostile work environment harassment or constructive[*15] discharge. In addition, Uni-Marts argues that Seldomridge cannot show that she is entitled to punitive damages. n4 In contrast, Seldomridge alleges that there are sufficient facts in the record from which a reasonable jury could rule in her favor on all of these issues. The court will address these issues in turn.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n4 Uni-Marts also argues that, even assuming that a hostile work environment existed, it still has an affirmative defense to liability. However, because the court concludes that Seldomridge's hostile work environment claims fail as a matter of law, it need not address Uni-Marts' affirmative defense.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

A. Hostile Work Environment

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." *42 U.S.C. § 2000e-2* (a)(1). n5 Although the statute mentions specific employment[*16] decisions with immediate consequences, it covers more than "terms" and "conditions" in the narrow contractual sense. See *Faragher v. City of Boca Raton, 524 U.S. 775, 786, 141*

*L. Ed. 2d 662, 118 S. Ct. 2275 (1998)*. Thus, sexual harassment that is so "severe or pervasive" as to "'alter the conditions of [the victim's] employment and create an abusive working condition violates Title VII. Id. (quoting *Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)); Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir. 1999)* (stating that it is well established that a plaintiff can prove a violation of Title VII by proving that sexual harassment created a hostile or abusive work environment).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n5 According to her complaint, Seldomridge filed a charge of discrimination with the DDOL on April 16, 1998 and May 8, 1998. She received a "right to sue" letter from the Equal Employment Opportunity Commission on May 6, 1999, and subsequently filed her complaint eighty-nine days later on August 3, 1999. Thus, Seldomridge has established that she complied with all of Title VII's pre-filing requirements in a timely manner. See *42 U.S.C. § 2000e-5*(e)(1) (affording a plaintiff 180 day to file a charge of discrimination with either the appropriate state or federal agency and 90 days to file suit after receiving a right to sue letter).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*17]

Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. *Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)*. In order to fall within the purview of Title VII, the conduct in question must be severe or pervasive enough to create both an "objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile," and an environment the victim-employee subjectively perceives as abusive or hostile. See *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 126 L. Ed. 2d 295, 114 S. Ct. 367, (1993). n6*

Case 1:04-cv-00126-GMS    Document 39-10    Filed 04/15/2005    Page 11 of 30

Page 12
2001 U.S. Dist. LEXIS 9491, *

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 The Supreme Court reaffirmed Harris' "severe and pervasive" test in *Faragher v. City of Boca Raton, 524 U.S. 775, 783, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998)*, and *Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)*.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

In this case, [*18] Seldomridge argues that she was subjected to a hostile work environment when Walsh exposed himself to her on January 16, 1998. In addition, Seldomridge also argues that she was subjected to a hostile work environment when she returned to work after the incident. The court will  address these arguments in turn.

1. Claim Based on the January 16, 1998 Incident

In deciding a hostile work environment claim, the court must examine the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." *Harris, 510 U.S. at 23.* In order to establish a hostile work environment claim, a plaintiff must show that:

(1) the plaintiff suffered intentional discrimination because of their sex,
(2) the discrimination was pervasive or regular, n7
(3) the discrimination detrimentally affected the plaintiff,
(4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and
(5) the existence of respondeat superior liability.

See *Andrews v. City of Philadelphia, 895 F.2d 1469, 1482-83 (3d Cir. 1990).* [*19]See also *Weston v. Pennsylvania, 251 F.3d 420, 2001 WL 539470,* at *3-4 (3d Cir. 2001); *Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999).*

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 Although the Andrews test states that the conduct must be "severe and pervasive," the Supreme Court's decisions in Faragher and Ellerth emphasize that actionable conduct can also be severe or pervasive. See, e.g., *Pittman v. Continental Airlines, Inc., 35 F. Supp. 2d 434, 441 (E.D. Pa. 1999)* (explaining same).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

In this case, there is no dispute as to the first, third, and fifth factors of the Andrews test. As to the first prong, Walsh's conduct was motivated by Seldomridge's sex or gender. n8 As to the third prong, there is evidence in the record to support Seldomridge's claim that, from a subjective viewpoint, she was detrimentally affected. Specifically, Seldomridge claims that she sought the counsel of her therapist about the incident, and that she was troubled enough to immediately report[*20] the incident to the police. Finally, as to the fifth prong, because Walsh was Seldomridge's immediate supervisor, Uni-Marts would be vicariously liable for his conduct. n9 See *Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998); Faragher v. City of Boca Raton, 524 U.S. at 777-78* ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the  employee."). Therefore, the court will focus its inquiry on whether Walsh's conduct was sufficiently severe or pervasive and whether it would objectively detrimentally affect a reasonable person in Seldomridge's position.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 For the purposes of Title VII, "sex" and "gender" are not considered to be distinct concepts. See *Durham Life Ins. Co. v. Evans, 166 F.3d 139, 148 (3d Cir. 1999).*

n9) As the court has stated, it is clear that under the Supreme Court's decisions in Ellerth and Faragher, Uni-Marts would be vicariously liable for Walsh's conduct. However, Seldomridge also suggests that Uni-Marts is directly liable under Title VII because of its own negligence in hiring and retaining Walsh.

In *Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 141 L. Ed. 2d 633, 118 S. Ct. 2257,* the Supreme Court explained that an employer may be liable for a supervisor's harassing conduct either directly or indirectly. See *id. at 758-760.* An employer will be directly liable for a supervisor's harassment when the employer either intended, or negligently permitted, the tortious conduct to occur. *Id. at 759.* ("Thus, although a supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is a cause of the harassment."); *Dees v. Johnson Controls World Services, Inc,. 168 F.3d 417, 421 (11th Cir. 1999)* (explaining same). See also *Anderson v. Deluxe Homes of PA, Inc., 131 F. Supp. 2d 637, 647 n.10 (M.D. Pa. 2001)* (explaining that respondeat superior liability could depend "on whose behavior is at issue, that of the supervisor or the employer itself").

The court need not address this issue, however, because it finds that Walsh's hostile work environment claim fails because the conduct was not severe enough to be actionable under Title VII. In addition, the court need not decide whether Uni-Marts was negligent in hiring Walsh because Seldomridge has failed to allege any state law claims for negligent hiring or retention. See e.g., *A. R. Anthony & Sons v. All-State Investigation Sec. Agency, Inc., 1983 Del. Super. LEXIS 647, *5 (Del. Super. Ct. Sept. 27, 1983)* (explaining that an employer is liable for negligent hiring when it has "reason to know or in the exercise of reasonable care should have known that an employee has an undue tendency to cause harm"). However, the court does note that Seldomridge has not cited to one case which interprets Title VII as mandating that an employer conduct a criminal background investigation into every employee. But see e.g., *Bryant v. Better Business Bureau of Greater Maryland, 923 F. Supp. 720, 752 (D. Md. 1996)* (explaining that "Even where the employer knows of a criminal record and still hires the employee, this does not automatically make out a prima facie case of negligent hiring. Instead, it depends upon the nature of the criminal record and the surrounding circumstances.") (citations omitted). Thus, although there is evidence that Walsh had a criminal record, Seldomridge has failed to adduce any evidence which would demonstrate that Uni-

Marts should have known about Walsh's background. See *id.* (granting summary judgment to defendants where a plaintiff failed to demonstrate with sufficient specificity that the defendants should have known about another employee's criminal background).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*21]

Uni-Marts maintains that because Walsh's exposure to Seldomridge was a single, isolated incident, she cannot establish a hostile work environment as a matter of law. In general, an isolated incident of sexual misconduct is not actionable under Title VII. *Clark Cty. School District v. Breeden, 532 U.S. 268, 149 L. Ed. 2d 509, 121 S. Ct. 1508, 1510 (2001)* (citing *Faragher, 524 U.S. at 788); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997).* In exceptional cases, however, an isolated incident may be actionable under Title VII if it is extremely serious such that it alters the terms and conditions of employment to create a hostile or abusive work environment. See *Meritor, 477 U.S. at 67.* In other words, a single incident may support a claim for hostile work environment sexual harassment if the incident is "of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work . . . ." *LaRose v. Philadelphia Newspapers, Inc., 21 F. Supp. 2d 492,* (E.D. Pa. 1998). For example, a single incident of physical assault or offensive[*22] touching has been held to be sufficiently severe to support a hostile work environment claim. See e.g., *Grozdanich v. Leisure Hills Health Center, Inc., 25 F. Supp. 2d 953, 969-70 (D. Minn. 1998)* (holding that a reasonable jury could find that an isolated incident of sexual assault created a hostile work environment). n10 See also *Jones v. United States Gypsum, 2000 U.S. Dist. LEXIS 2700,* No. C99-3047-MWB; *2001 WL 196616,* at *4 (N.D. Iowa Jan. 21, 2000) (holding that single incident of offensive touching may be severe enough to support a hostile work environment claim).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n10 Citing *Todd v. Ortho Biotech, Inc., 138 F.3d 733, 736 (8th Cir. 1998)* (single attempted rape at national sales meeting held sufficiently severe misconduct to be actionable); *Guess v. Bethlehem Steel Corp., 913 F.2d 463, 464 (7th Cir. 1990)*

2001 U.S. Dist. LEXIS 9491, *

(single incident where supervisor picked up plaintiff and forced her face against his crotch impliedly considered to create hostile environment); *Fall v. Indiana University Bd. of Trustees, 12 F. Supp. 2d 870, 879 (N.D. Ind. 1998)* (single assault, involving a groping of intimate areas, may create hostile environment).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*23]

Furthermore, in determining whether a plaintiff-employee has been subjected to a hostile work environment, the court not only looks to the regularity or severity of allegedly harassing conduct, but also must look to the fourth factor of the Andrews test, and determine whether the conduct would detrimentally affect a reasonable person. See *Anderson v. Deluxe Homes of Pa, Inc., 131 F. Supp. 2d 637, 646 (E.D. Pa. 2001)*. n11 After all, "not all workplace conduct that may be described as harassment affects a "'term, condition or privilege of employment.'" *Kantar v. Baldwin Cooke Co., 1995 U.S. Dist. LEXIS 17330*, at *10, No. 93 C 6239 (N.D. Ill. Nov. 13, 1995) (citing *Harris v. Forklift Systems, Inc., 510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993))*. The purpose of including the objective standard is to "protect[] the employer from the hypersensitive employee [while] still serving the goal of equal opportunity by removing the walls of discrimination that deprive women of self-respecting employment." *Andrews, 895 F.2d at 1483; see also Gupta v. Florida Bd. of Regents , 212 F.3d 571, 586 (11th Cir. 2000)*[*24] ("But a plaintiff's subjective feelings and personal reactions are not the complete measure of whether conduct is of a nature that it interferes with job performance. If it were, the most unreasonably hypersensitive employee would be entitled to more protection than a reasonable employee, and the standard would not have an objective component.").

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n11 Evidence that others were harassed may serve to bolster the objective reasonableness of a plaintiff's claims. *Anderson, 131 F. Supp. 2d at 646* (citing *West v. Philadelphia Electric Co., 45 F.3d 744, 757 (1995)*. Although there is evidence in the record concerning another complaint about Walsh, the court will not consider Tina Eastlake's allegations of

harassment because Seldomridge has stated that she did not learn of Eastlake's complaints until well after the incident. See, e.g., *Hirase-Doi v. U.S. West Comms., Inc., 61 F.3d 777, 782 (10th Cir. 1995)* (explaining that a plaintiff may rely only on evidence relating to harassment of which she was aware during her employment). In addition, considering that Eastlake's alleged quid pro quo harassment claim arose within the context of an affair she had with Walsh and did not involve the type of conduct at issue with Seldomridge (i.e. exposure), the court will not consider the Eastlake complaint in determining whether Seldomridge's claims are objectively reasonable.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*25]

Even construing the evidence in the record in Seldomridge's favor, the court concludes that Walsh's brief exposure to Seldomridge was not so severe that it altered the terms and conditions of her employment. n12 In determining whether Walsh's conduct was so severe that it changed the conditions of Seldomridge's employment, the court is mindful that it must look to the totality of the circumstances. Under the totality of the circumstances of this case, the court concludes that Seldomridge's claim must fail as a matter of law. In particular, the court notes that Seldomridge thought Walsh was joking when he said he would be coming out of the bathroom wearing "nothing but a cigarette." Although Seldomridge characterizes this conduct as offensive and inappropriate, she does not suggest that she felt threatened by Walsh's conduct leading up to the exposure. See *Slaughter v. Waubonsee Comm. Coll., 1995 U.S. Dist. LEXIS 14236*, *12, No. 94 C 2525 (N.D. Ill. Sept. 29, 1995). Also, Seldomridge stated that she only saw Walsh naked for a few seconds from about 30 feet away and Walsh immediately retreated to the store room area. Seldomridge does not allege that Walsh tried to[*26] keep her from leaving the store, or even that he tried to approach her. In addition, it is undisputed that Uni-Marts immediately and effectively dealt with Walsh's conduct. Thus, this brief incident, which Seldomridge concedes was quickly and effectively resolved, cannot be said to have unreasonably interfered with her work performance. See *Mathers v. Sherwin-Williams Co., 2000 U.S. Dist. LEXIS 3716*, *28, Civ. A. NO. 97-5138 (E.D. Pa. Mar. 27, 2000) (affirming an arbitrator's conclusion that the plaintiff failed to meet the objective prong of the Andrews test because a "reasonable person would [not] have found this one-time

comment, in the context in which it occurred and as it was subsequently addressed by [the defendant], to be severe and pervasive enough to have resulted in a hostile or abusive work environment.").

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n12 Seldomridge also stated that before the incident Walsh made her uncomfortable at work by saying that he thought she was pretty, he would like to "rock her world" and by making other "stupid, off-the wall comments." Interestingly, Seldomridge does not argue that these comments contributed to her hostile work environment claim. However, even if Seldomridge did argue that Walsh's comments and the one-time incident created a hostile work environment, the court concludes that under the totality of the circumstances, Seldomridge still cannot establish an actionable claim under Title VII. It is well established that "simple teasing, offhand comments, and isolated incidents will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher, 524 U.S. at 788* (citations omitted). See e.g., *Bishop v. National Railroad Passenger Corp., 66 F. Supp. 2d 650, 663 (E.D. Pa. 1999)* (holding that staring, leering and suggestive comments were neither severe nor pervasive, nor sufficiently detrimental to create a hostile work environment); *Pittman v. Continental Airlines, Inc., 35 F. Supp. 2d 434, 442 (E.D. Pa. 1999)* (holding that occasional encounters with graphic sexual conversation and personal questions failed to create an atmosphere that would have an "objectively detrimental effect on a reasonable person in her position").

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*27]

In light of the evidence in the record, the court concludes that no reasonable fact finder could return a verdict for Seldomridge on her hostile work environment claim. Although Walsh's brief onetime exposure may have been offensive and inappropriate, it was not so severe or extremely serious, under the totality of the circumstances, that it altered the conditions of Seldomridge's employment. See e.g., *Bauder v. Wackenhut Corp., 2000 U.S. Dist. LEXIS 4044, Civ. A. 99-1232, 2000 WL 340191, at *4 (E.D. Pa. Mar. 23,*

2000) (holding that a one time incident where supervisor grabbed plaintiff employee's behind did not sufficiently support a hostile work environment claim); *DeCesare v. National Passenger Railroad Corp., 1999 U.S. Dist. LEXIS 7560, No. CNA 98-3851, 1999 WL 330258,* at *3 (E.D. Pa. May 24, 1999); *Pittman, 35 F. Supp. 2d at 442; Bishop, 66 F. Supp. 2d at 664; Porta v. Dukes, 1998 U.S. Dist. LEXIS 12325, No. Civ. A 98-2721, 1998 WL 470146,* at *2 (E.D. Pa. Aug. 11, 1998). n13 See also *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)* n14 (affirming grant of summary judgment to defendant where plaintiff's hostile work environment claim was based[*28] upon a single incident of breast touching and one lewd comment).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n13 Both DeCesare and Porta cite to several other cases where a single incident was found to be insufficient to support a hostile work environment claim. These cases include: *Koelsch v. Beltone Electronics Corp., 46 F.3d 705, 708 (7th Cir. 1995)* (finding no hostile environment existed where the company president rubbed the plaintiff's leg, grabbed her buttocks, and asked her for dates); *Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 534-35 (7th Cir.1993)* (finding that there was no hostile environment where the plaintiff's supervisor put his hand on the plaintiff's leg and kissed her until she pushed him away, and on another occasion the supervisor lurched at the plaintiff and tried to grab her); *Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir.1993)* (holding that there was no hostile work environment where supervisor asked the plaintiff for dates, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs in her work area, and attempted to kiss her); *Cooper-Nicholas v. City of Chester, 1997 U.S. Dist. LEXIS 20810, No. 95-6493, 1997 WL 799443* (E.D.Pa. Dec. 30, 1997) (supervisor's sexual comments over nineteen months were not frequent or sufficiently severe to create a hostile work environment).

[*29]

n14 In particular, the court in Quinn noted that: "Though the two incidents in question--[supervisor's] comment, apparently regarding [plaintiff's] posterior, and his use of papers held in his hand to touch her breasts--are obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier

of fact could not reasonably conclude that they pervaded [plaintiff's] work environment. Nor are these incidents, together or separately, of sufficient severity to alter the conditions of [plaintiff's] employment without regard to frequency or regularity." Id. at 768

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

2. Claim Based on Conduct of Co-Workers and Customers After Seldomridge Returned to Work

Seldomridge also argues that the actions of a co-worker, Teddy, and certain customers after her return to work constituted actionable sexual harassment. Again, the court looks to the factors established by the Third Circuit to determine whether Seldomridge can establish a hostile work environment claim. In particular, the court must look to see if: (1) the plaintiff suffered intentional discrimination because of[*30] their sex, (2) the discrimination was pervasive or regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

The parties dispute whether Seldomridge can establish the first prong of the test. In particular, Uni-Marts argues that, even accepting all facts in the record as true, Seldomridge cannot establish that the conduct of Teddy and the customers was motivated by Seldomridge's sex or gender. The court agrees. While sexual overtones are not necessary to show discrimination because of the plaintiff's sex, the offending conduct must nonetheless be motivated by a plaintiff's sex or gender. See Durham Life Ins. Co. v. Evans, 166 F.3d at 148 (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996)). After all, Title VII is not a "general civility code." Faragher, 524 U.S. at 788. "Ordinary tribulations of the workplace, such as the sporadic use of abusive[*31] language, gender-related jokes, and occasional teasing" are not actionable. See Id. Moreover, "Title VII is not a shield against harsh treatment in the workplace; it protects only in instances of harshness disparately distributed." Swingle v. Henderson, 142 F. Supp. 2d 625, 2001 WL 483317, at *12 (D.N.J. 2001) (quoting Jackson v. City of Killeen, 654 F.2d 1181, 1186 (5th Cir.1981)). In particular, allegedly harassing conduct that is motivated by a bad working relationship,

by a belief that the plaintiff has in some way acted improperly, or even by personal animosity is not actionable under Title VII. See Koschoff v. Henderson, 109 F. Supp. 2d 332, 345-46 (E.D. Pa. 2000). Based on the record before it, the court concludes that a reasonable jury could not find that the teasing Seldomridge suffered was motivated by her gender. n15

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n15 Although the court will not address the second, third, and fourth factors articulated in Andrews, it notes that the conduct of Teddy and certain customers simply does not rise to the level of severity or pervasiveness that is required by Title VII. "A recurring point in these opinions is that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) (citations omitted). Moreover, Title VII is not "designed to protect the overly sensitive plaintiff." See Bishop, 66 F. Supp. 2d at 664 (citing Harley v. McCoach, 928 F. Supp. 533, 539 (E.D. Pa. 1996)).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*32]

In addition, Seldomridge's hostile work environment claim fails because she cannot establish respondeat superior liability. Although the Supreme Court has not address hostile work environment claims arising from the actions of a co-worker, the Third Circuit's decision in Kunin v. Sears Roebuck and Co., 175 F.3d 289 (3d Cir. 1999), is controlling on this issue. Kunin examined the scope of respondeat superior liability for hostile work environment claims based on the actions of a co-worker. Id. at 290. Under Kunin, employer "liability exists where the defendant [employer] knew or should have known of the harassment and failed to take prompt remedial action." 175 F.3d at 293-94. In this case, Seldomridge maintains that during the time period that the alleged harassing behavior of Teddy and the customers occurred, "the manager there already knew . . . . How Teddy was acting with me, how the customers were." Seldomridge Deposition, at 111. After carefully reading through the record, this appears to be Seldomridge's sole basis for her respondeat superior claim. Because Seldomridge has

admitted that she did not attempt to lodge a complaint[*33] with anyone in management at Uni-Marts, it appears that Seldomridge is arguing that Uni-Marts had constructive notice of the allegedly harassing conduct.

Under Kunin, an employer would have constructive notice in two situations: 1) where an employee provides a supervisor with enough information to raise the probability of sexual harassment in the minds of a reasonable employer or 2) where harassment is so pervasive and open that a reasonable employer would have had to be aware of it. See *id. at 294* (citing *Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1018-19 (7th Cir. 1996))*. Even construing the facts in the record in the light most favorable to Seldomridge, the court cannot find that Uni-Marts had constructive notice of the alleged harassing conduct.

First, Seldomridge has provided no evidence in the record to show that she provided her supervisor with enough information to raise a probability of sexual harassment in the minds of a reasonable employer. In Kunin, the employee claimed that by asking whether "'cursing was allowed on the sales floor,'" she provided her employer with notice of sexual harassment. Id. There was also[*34] evidence in Kunin that the employee's supervisor heard rumors about "offensive language in his department but never investigated them." Id. The Kunin court held that this evidence could not establish that the employer had constructive notice of sexually harrasing behavior. Id. In particular, the court reasoned that because the employee's complaint did not communicate sexually offensive behavior and the evidence of rumor did not refer to gender-specific harassment, the employee had failed to establish that the employer was on constructive notice. *175 F.3d at 294-95*. In this case, Seldomridge admits that she failed to even lodge a complaint with her supervisor about the alleged harassment. Also, as the court has already discussed, the allegedly harassing conduct was not gender specific.

As for the second type of situation that can support a finding of constructive notice, Seldomridge simply has not alleged the type of open and pervasive harassment that would put a reasonable employer on constructive notice. Seldomridge has shown, at best, that she was subjected to off-hand teasing and that one co-worker and a customer failed to "believe her" about the Walsh incident. [*35] However, she has also clearly stated that all of her other co-workers believed her (including her supervisor) and were supportive of her regarding the incident with Walsh. Moreover, as the court has already noted, Seldomridge has not shown that this harassment was motivated by her gender. In light of these facts, Seldomridge cannot show that the conduct was so open

and pervasive that a reasonable employer would have had constructive notice of a hostile working environment. See Kunin, 175 at 295 (holding management had little opportunity to discover the harassment because it was not open and pervasive). n16

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n16 Moreover, it would be unreasonable to hold Uni-Marts liable for the conduct of Teddy and certain customers in light of the record. It is undisputed that Seldomridge had already used Uni-Marts' sexual harassment policy regarding the Walsh incident. Thus, Seldomridge could have easily provided Uni-Marts with actual notice. See *Bishop, 66 F. Supp. 2d at 666-67* (holding that an employer could not be held liable for conduct of co-workers where there was a reasonable avenue for making a complaint available to the plaintiff, and the employer had no notice of co-worker's conduct).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*36]

Thus, because Seldomridge has failed to show that there are facts in the record which would show that Uni-Marts had either actual or constructive notice of the alleged harassing conduct, Seldomridge cannot establish that Uni-Marts is liable under a respondeat superior theory regarding the conduct of her co-worker, Teddy, and certain customers.

B. Constructive Discharge

Seldomridge has also alleged that she was constructively discharged from her position at Uni-Marts. n17 In particular, Seldomridge alleges that following the Walsh incident, the harassing conduct of her co-worker Teddy and certain customers was so severe that it forced her to quit her job approximately one month after returning to work. After quitting, Seldomridge went to work at an establishment called the Eating Post.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n17 In her complaint, Seldomridge alleges that she suffered from harassment resulting in a tangible employment action. See D.I. 1, PP39-41. When a supervisor creates a hostile work environment and takes a tangible employment action against a victimized employee, the employer is not entitled to raise an affirmative defense. See *Faragher v. City of Boca Raton, 524 U.S. at 777-78*. In this case, Seldomridge argues that she suffered a tangible employment action in that she was constructively discharged from her position at Uni-Marts. The Third Circuit has held that in certain instances, a constructive discharge can be a tangible employment action. See *Durham Life Ins. Co. v. Evans, 166 F.3d 139, 156 (3d Cir. 1999)* (declining to adopt a blanket rule that a constructive discharge constitutes a tangible employment action). Because the court has determined that Seldomridge cannot establish her hostile work environment claims, it need not address whether Uni-Marts would be entitled to assert an affirmative defense. However, the court will still address Seldomridge's constructive discharge claim because she has also alleged, as a separate and independent cause of action, that she was constructively discharged. See D.I. 1, PP35-38.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -
- - - -

[*37]

A plaintiff who voluntarily resigns may maintain a case of constructive discharge when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge. See *Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1075 (3d Cir. 1996)* (citing *Gray v. York Newspapers, Inc, 957 F.2d 1070, 1079 (3d Cir. 1992))*. In determining if a constructive discharge has occurred the court should apply an objective test. Id. That is, whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Id. (quoting *Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996)* and *Goss v. Exxon Office Systems Co., 747 F.2d 885, 888 (3d Cir. 1984))*. Thus, a plaintiff must demonstrate that from an objective viewpoint, the employer condoned acts of discrimination which would violate Title VII. See *Maher v. Associated Services for the Blind, 929 F. Supp. 809, 814 (E.D. Pa. 1996)*. However, "the mere fact that the plaintiff feels uncomfortable or considers her working[*38]

environment unduly stressful is an insufficient basis for a constructive discharge claim." Id. (citing *Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985))*; see also *McLaughlin v. Rose Tree Media School District, 52 F. Supp. 2d 484, 493 (E.D. Pa. 1999)* ("more than subjective perceptions of unfairness or harshness or a stress-filled work environment are required").

Viewing the record in the light most favorable, the court concludes that Seldomridge cannot establish that she was constructively discharged as a matter of law. First, as the court has already explained with regard to her hostile work environment claim, Seldomridge has not shown that Uni-Marts intentionally made her working conditions intolerable, or even that Uni-Marts should have been aware of the teasing. Second, it would not be reasonable in this case to assume that Seldomridge had no other option but to quit. See *Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993)* (explaining that "a reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option"). In[*39] light of Seldomridge's prior use of the sexual harassment policy, it is clear that she could have again called the toll-free number that she used to complain about Walsh. Although Seldomridge alleges that she didn't know she could use the number for the purpose of complaining about her co-worker's conduct, her mistaken belief cannot negate the fact that Uni-Marts was neither aware of, nor responsible for, the conduct of her co-workers. Finally, as the court has already stated, Seldomridge's vague descriptions of the allegedly harassing conduct simply cannot be construed as "intolerable" to a reasonable person. Based on this record, no reasonable trier of fact could determine that Uni-Marts knowingly made Seldomridge's working conditions intolerable, or that her working conditions were so intolerable that a reasonable person would have been forced to quit. See e.g., *Williams v. Caruso, 966 F. Supp. 287, 298 (D. Del. 1997)* (J. Schwartz) (holding that facts in the record did not support claim that employer knowingly permitted conditions of discrimination). n18

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -
- -

n18 In her complaint, Seldomridge also alleges that she is entitled to punitive damages as a separate cause of action. D.I. 1, PP 42-43. However, *42 U.S.C. § 1981a* "does not, either expressly or impliedly, create an additional, separate and independent cause of action for employment discrimination plaintiffs, but merely adds to the damages available to such plaintiffs under Title VII." *West v. Boeing Co., 851*

*F. Supp. 395, 398 (D. Kan. 1994).* See also *Singh v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 8531, No. Civ. A. 98-1613, 1999 WL 374184, *8 (E.D. Pa. June 10, 1999).* Thus, because Seldomridge cannot establish her Title VII claim, she is not entitled to punitive damages. See also id. at 399 ("section 1981a clearly 'adds to the damages available to a plaintiff who shows, under Title VII, that she was the victim of intentional discrimination in employment.'") (citing *Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1994)).*

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*40]

V. CONCLUSION

For the foregoing reasons, the court concludes that Uni-Marts is entitled to summary judgment because Seldomridge cannot establish her claims of hostile work environment harassment or constructive discharge as a matter of law.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

1. Pursuant to *Rule 56(e) of the Federal Rules of Civil Procedure*, Uni-Marts' Motion for Summary Judgment (D.I. 79) is GRANTED.

2. Summary Judgment be and hereby is ENTERED in favor of Uni-Marts and against Seldomridge on all claims in the complaint.

Date: July 10, 2001

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

PATRICIA MITCHELL, Plaintiff-Appellant, v. WILLIAM J.HENDERSON, Postmaster General of the United States, U.S. Postal Service; UNITEDSTATES POSTAL SERVICE; UNITED STATES POSTAL SERVICE, GENERAL MAIL FACILITY,DENVER, COLORADO, Defendants-Appellees.
No. 99-1205

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

2000 U.S. App. LEXIS 274

January 7, 2000, Filed

NOTICE:

[*1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

SUBSEQUENT HISTORY: Reported in Table Case Format at: *2000 U.S. App. LEXIS 4203.*

PRIOR HISTORY: (D. Colo.) (D.C. No. 97-WY-2734-WD).

DISPOSITION: AFFIRMED.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff appealed from the United States District Court for the District of Colorado entry of summary judgment in defendants' favor on her claims of race discrimination, brought pursuant to Title VII, *42 U.S.C.S. §§ 2000e* through 2000e-17, and disability discrimination, brought pursuant to the Rehabilitation Act, *29 U.S.C.S. § 791.*

OVERVIEW: Plaintiff appealed from the entry of summary judgment in defendants' favor on her claims of race discrimination, brought pursuant to Title VII, *42 U.S.C.S. §§ 2000e* through 2000e-17, and disability discrimination, brought pursuant to the Rehabilitation Act, *29 U.S.C.S. § 791.* Summary judgment was affirmed on race discrimination claim for failure to make a prima facie case. Specifically, plaintiff failed to show that similarly situated persons were treated differently than she was. Summary judgment was affirmed on plaintiff's Rehabilitation Act claim also for failure to make a prima facie case. While lifting was considered a major life activity, because plaintiff was impaired in lifting only for six months, the short duration of her lifting inability did not suffice to make her a handicapped person within the Act.

OUTCOME: Summary judgment was affirmed on race discrimination claim for failure to make a prima facie case. Specifically, plaintiff failed to show that similarly situated persons were treated differently than she was. Summary judgment was also affirmed as to plaintiff's disability discrimination claim, for failure to make a prima facie case.

LexisNexis(R) Headnotes

COUNSEL: For PATRICIA MITCHELL, Plaintiff-Appellant: Steven Carl Janiszewski, Denver, CO. Karen Gayle Robinson, PHM Robinson and Associates, Denver, CO.

For UNITED STATES POSTAL SERVICE, GENERAL MAIL FACILITY, DENVER, COLORADO, WILLIAM J. HENDERSON, Postmaster General of the United States Postal Service, Defendants-Appellees: Kathleen L. Torres, Office of the United States Attorney, Denver, CO.

JUDGES: Before BRORBY, PORFILIO, and LUCERO, Circuit Judges.

OPINIONBY: CARLOS F. LUCERO

OPINION: ORDER AND JUDGMENT *

- - - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -
- -

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*2]

Plaintiff, an African-American woman, appeals the district court's entry of summary judgment in defendants' favor on her claims of race discrimination, brought pursuant to Title VII, *42 U.S.C. §§ 2000e* through 2000e-17, and disability discrimination, brought pursuant to the Rehabilitation Act, *29 U.S.C. § 791*. n1 By stipulation, plaintiff dismissed her claims of retaliation and intentional infliction of emotional distress and defendants dismissed their challenge to the federal district court's subject matter jurisdiction. We exercise appellate jurisdiction under *28 U.S.C. § 1291* and affirm.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See *Fed. R. App. P. 34(f)*; *10*th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Plaintiff, an employee of the United States Postal Service, sustained[*3] a repetitive stress injury to her right arm and hand on May 31, 1995. She filed for worker's compensation benefits and, after a few weeks' delay in processing her claim, she was awarded benefits retroactive to her injury date. Plaintiff's physician initially limited her ability to lift to five pounds, among other restrictions. Even so, plaintiff worked for a short time at a light duty position that did not meet with the lifting restrictions imposed by her physician until she was sent home because no work within her restrictions was

available. She alleges that defendants failed, for several months, to accommodate her injury by locating a job that she could perform within the restrictions imposed by her physician. On November 29, 1995, after her physician authorized her to lift twenty pounds, plaintiff was offered an alternate job, which she accepted.

For her Title VII claim, plaintiff alleges that she, and other non-white employees, were treated less favorably than white employees in the processing of injury claim forms. According to her, non-white injured employees were not given the proper forms or assisted to complete them, their questions were not answered, and their forms were[*4] not processed timely, while white employees received help in completing and filing their injury claim forms and their claims were quickly processed. In addition, plaintiff asserts that injured white employees were given light duty jobs, while non-whites were sent home due to lack of appropriate work. She further claims that a similarly situated white female employee was placed in a light duty job, while plaintiff was told no suitable work was available. Plaintiff's Rehabilitation Act claim is based on defendants' action in sending her home from work because no job within her lifting restriction was available, and in not finding a suitable job for her for several months.

We review de novo the district court's decision to grant summary judgment, "applying the same legal standard as the district court." *Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999)*. The moving party must first demonstrate an absence of evidence in support of the non-moving party's claims. See *Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995)*. Although we will resolve doubts in favor of the non-moving party, "conclusory allegations standing[*5] alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir. 1995)*.

To withstand a motion for summary judgment on her disparate treatment race discrimination claim, plaintiff must meet the initial burden to establish a prima facie case. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. She must show (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; and (3) similarly situated employees were treated differently. See *Trujillo v. University of Colo. Health Sciences Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998)*. Once plaintiff has demonstrated a prima facie case, the burden of production shifts to defendants to show a "legitimate, nondiscriminatory reason" for the adverse employment action. *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*. If the employer does so, the burden shifts back to

the employee to demonstrate a genuine issue of material fact on the issue of whether the employer's stated reason was unworthy [*6]of belief. See *id. at 256.*

Defendants moved for summary judgment alleging that plaintiff failed to demonstrate a prima facie case of race discrimination based on her deposition, in which she admitted that she had no knowledge of any similarly situated non-minority employee who received different treatment than she had, see Appellant's App. at 96-97. Therefore, the burden shifted to plaintiff, the non-moving party, to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)* (quoting *Fed. R. Civ. P. 56(e)*).

Plaintiff argues on appeal that her amended complaint and affidavit are sufficient to withstand summary judgment. Both documents contain only plaintiff's conclusory beliefs and observations that non-minority employees were treated more favorably than minority employees. See, e.g., Appellant's App. at 3-7, 160. Those conclusory allegations are not supported by evidence and therefore are insufficient to resist[*7] summary judgment. See *Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).*

Plaintiff did produce evidence of a specific employee who she asserted was both white and similarly situated and who was assigned to a light duty job due to an injury, while plaintiff was sent home because no job was available to suit her lifting restriction. The other employee, however, was authorized to lift as much as ten pounds, while plaintiff could lift no more than five pounds. In addition, plaintiff produced no evidence of the other employee's job title, supervisor, pay rate or other information to establish that her situation was similar to plaintiff's. n2 Accordingly, because plaintiff can point to no one who was not a member of a protected group and whose circumstances were similar to hers who received more favorable treatment than she, she has not established a prima facie case of race discrimination. Summary judgment was, therefore, appropriate.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -
- -

n2 Because we determine that plaintiff failed to show that the other employee was similarly situated, we do not rely on the absence of proof that the other employee was a non-minority.

[*8]

A prima facie case under the Rehabilitation Act requires a showing that "(1) [plaintiff] is a handicapped person within the meaning of the Act; (2) she is otherwise qualified for the job; and (3) she was discriminated against because of the handicap." *Woodman v. Runyon, 132 F.3d 1330, 1338 (10th Cir. 1997).* Here, plaintiff failed to show that she was a handicapped person within the meaning of the Act. Her claim is based on defendants' failure to locate a job to accommodate her five-pound lifting restriction from May 31, 1995 to November 29, 1995, when her lifting restriction was raised to twenty pounds and she was placed in a light-duty job. To evaluate whether plaintiff's lifting impairment "substantially limited" a major life activity, see *Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996)* ("lifting" is major life activity), we examine the duration or expected duration of the impairment and the permanent or expected long-term impact of the impairment. See *McGuinness v. University of N.M. Sch. of Medicine, 170 F.3d 974, 978 (10th Cir. 1998),* cert. denied, *526 U.S. 1051, 143 L. Ed. 2d 518, 119 S. Ct. 1357 (1999);*[*9] *29 C.F.R. § 1630.2(j)(2)(ii),* (iii). We hold that plaintiff's five-pound lifting restriction lasting six months was of insufficient duration to qualify as a disability under the Act. Accordingly, plaintiff failed to establish a prima facie case under the Act, and summary judgment in defendants' favor was correct.

The grant of summary judgment is AFFIRMED.

ENTERED FOR THE COURT

Carlos F. Lucero

Circuit Judge

JOEL S. RONDON, Plaintiff, v. WAL-MART, INC., Defendant.
No. C-97-0369 MMC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OFCALIFORNIA

1998 U.S. Dist. LEXIS 16137

October 8, 1998, Decided
October 8, 1998, Filed; October 13, 1998, Entered in Civil Docket

DISPOSITION: [*1] Defendant's motion for summary judgment on each of plaintiff's claims GRANTED.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant employer filed a motion for summary judgment, arguing that it did not violate the Americans with Disabilities Act (ADA), *42 U.S.C.S. § 12101,* Cal. Gov't. Code § 12926(k), or public policy in discharging plaintiff employee because of his disability.

OVERVIEW: Employee worked as a pharmacist for employer. Employee strained his lower back while at work and, as a result, missed four days of work. Employee was discharged shortly after showing a physician's note to his immediate supervisor. Employee brought several claims. The court held that employee failed to raise a triable issue with respect to disability. Without such a showing, employee's claims under both acts and for wrongful discharge were without merit. The court considered the nature, severity, and the duration of employee's injury, and concluded that at the time he was discharged that he was not substantially limited with respect to the major life activity of lifting.

OUTCOME: The court granted employer's motion for summary judgment on each of employee's claims.

LexisNexis(R) Headnotes

COUNSEL: For JOEL S. RONDON, Plaintiff: Michael E. Kinney, Michael E. Kinney Law Offices, Santa Rosa, CA.

For WALMART INC., defendant: John L. Barber, Norine M. Busser, Lewis D'Amato Brisbois & Bisgaard, Los Angeles, CA.

JUDGES: MAXINE M. CHESNEY, United States District Judge.

OPINIONBY: MAXINE M. CHESNEY

OPINION: ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On June 25, 1997, plaintiff Joel S. Rondon filed a first amended complaint against his former employer, defendant Wal-Mart Stores, Inc., alleging the following causes of action: (1) Violation of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101,* et seq., (2) Violation of California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940 et seq., and (3) Wrongful Discharge in Violation of Public Policy.

Defendant now moves for summary judgment, or, in the alternative, summary adjudication, on the ADA claim on the grounds that: (1) plaintiff's back injury is not sufficiently substantial to constitute a disability and (2) even if it is, plaintiff was not discharged on this basis. Defendant also moves for summary judgment, or, [*2] in the alternative, summary adjudication, on the FEHA and Wrongful Discharge claims on the ground that the Worker's Compensation Act, *Cal. Labor Code § 132a,* bars such claims.

BACKGROUND

Plaintiff worked as a pharmacist for defendant from mid-September 1995 to March 25, 1996, when he was discharged. (Rondon Decl. PP 2 and 11).

In late December 1995, plaintiff strained his lower back while working at Wal-Mart and, as a result, missed four days of work. (Rondon Decl. P 6); (Barber Decl., Exh. A). A physician's note, dated December 29, 1995, advised plaintiff to avoid bending, twisting, and lifting more than five to ten pounds. (Kinney Decl., Exh. O). A second note, dated January 11, 1996, limited plaintiff to a "desk job only." (Kinney Decl., Exh. P). A third note, dated March 19, 1996, diagnosed plaintiff's injury as a "low back strain" and advised plaintiff to avoid working more than three days straight for a period of three weeks,

and avoid repetitive twisting, bending, and lifting more than five pounds. (Kinney Decl., Exh. K). On March 25, 1996, shortly after showing the March 19 note to his immediate supervisor, John Keefe, plaintiff was discharged. (Rondon Decl. P 11). [*3] As of August 6, 1998, plaintiff declares he is "seriously limited in [his] ability to lift, bend or twist" and does "not seem to be getting any better." (Rondon Decl. P 6).

DISCUSSION

I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. The moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the nonmoving party has the burden of proof, but may discharge its burden simply by pointing out that there is an absence of evidence[*4] to support the nonmoving party's case. Celotex, 477 U.S. at 324-25, 106 S. Ct. at 2553-54. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50, 106 S. Ct. at 2511. When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

II. Analysis

"In order to lay claim to the protections of the ADA," [*5] a plaintiff "must first demonstrate that [he or] she is disabled within the meaning of the Act" ( Thompson v. Holy Family Hospital, 121 F.3d 537, 539 (9th Cir. 1997)) and that the disability existed at the time of the discriminatory act Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 884 (6th Cir. 1996); Nowak v. St. Rita High School, 142 F.3d 999, 1003 (7th Cir. 1998). A "disability" as defined in the ADA is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff argues that (1) his back injury is a physical impairment substantially limiting the major life activity of lifting and (2) even if the injury does not rise to this level, defendant regarded him as having such an impairment. Defendant argues that (1) at the time of discharge, plaintiff's back strain was a minor, temporary injury that did not constitute a disability, and (2) in any event, defendant had no information that would lead it to regard plaintiff as disabled.

A. Physical Impairment Substantially Impairing [*6] Major Life Activity

As defined in the regulations implementing the ADA, a physical impairment is:

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine . . .

29 C.F.R. § 1630.2(h). The Court concludes, and the parties do not dispute, that plaintiff's back strain qualifies as a physical impairment.

The regulations define the term "major life activity" as encompassing "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing and working." 29 C.F.R. § 1630.2(i). Plaintiff argues that lifting is a major life activity, and finds support in the regulations and cases applying them. See 29 C.F.R. § 1630 (Appendix) ("other major life activities include, but are not limited to, sitting, standing, lifting, reaching") (emphasis added); see Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996) (finding lifting to be a[*7] major life activity). The Court finds that lifting is a major life activity.

1998 U.S. Dist. LEXIS 16137, *

The next question is whether plaintiff's ability to life is "substantially limited." The term "substantially limited" means:

Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j). In determining whether a major life activity is "substantially limited," the following factors should be considered:

(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

At the time of discharge, plaintiff had a lower back strain which resulted in a five-pound lifting restriction. (Rondon Decl. P 6); (Kinney Decl., Exh. K). The Ninth Circuit has not addressed whether a physical impairment that prevents an individual from lifting more than five[*8] pounds is sufficiently severe to constitute a disability. It has, however, concluded that a person with a twenty-five pound lifting restriction is not disabled, Thompson v. Holy Family Hospital, Inc., 121 F.3d 537, 540 (9th Cir. 1997), and other circuits have held that persons with even stricter limitations are not disabled. See Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (ten-pound lifting restriction not a disability); Helfter v. UPS, 115 F.3d 613, 617 (8th Cir. 1997) (ten-to twenty-pound lifting restriction not a disability). The Eighth Circuit has gone further, adopting a per se rule that "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA." Snow v. Ridgeview Medical Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997).

Some courts, however, have held that lifting restrictions, at least when combined with other limitations, create a genuine issue of material fact with regard to whether a plaintiff is disabled. See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996) (reasonable jury could conclude plaintiff with multiple sclerosis and fifteen-pound[*9] lifting restriction was disabled); Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1100 (S.D. Ga. 1996) (triable issue regarding disability when plaintiff, after knee surgery and a laminectomy, was restricted from sitting more than sixty minutes, from standing more than thirty minutes, from walking continuously for more than three minutes, and from lifting more than ten to fifteen pounds); Martin v. Lockheed Martin, 1998 U.S. Dist. LEXIS 4258, *8 (N.D. Cal. 1998) (triable issue raised when plaintiff had two surgeries for carpal tunnel syndrome, was restricted from sustained hand activity and from lifting items over ten pounds, and was declared "permanent and stationary").

The instant case is distinguishable from this latter group of cases because plaintiff's impairment involves a lifting restriction only. It is further distinguishable in that no evidence suggests plaintiff's injury, at the time of discharge, was anything but temporary. See e.g., Lowe, 87 F.3d at 1174 (plaintiff suffered from multiple sclerosis which "is a neurological disease for which there is no known cure"); Martin, 1998 U.S. Dist. LEXIS 4258 at *7 (plaintiff with carpal tunnel syndrome was declared "permanent[*10] and stationary"); Haysman, 893 F. Supp. at 1097 (permanent disability rating with "indefinite and possibly permanent lifting restrictions" following laminectomy).

In contrast to the diagnoses in Lowe, Martin, and Haysman, the medical evidence of plaintiff's injury indicates that, at the time of discharge, it was not expected to be long-term or permanent. Plaintiff's evidence consists of three brief notes issued over a three-month period and culminating in a finding of a "back strain." (Kinney Decl., Exh. K). The third physician's note is particularly instructive as it advises plaintiff to change his work schedule, but only for a period of three weeks. (Kinney Decl. Exh. K).

Temporary, non-chronic injuries, resulting in little or no long-term impact, such as ankle sprains, broken limbs, sprained joints, concussions, appendicitis and influenza, generally do not qualify as disabilities. 29 C.F.R. § § 1630.20(j) (Appendix); Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996). In Sanders, the Ninth Circuit held that a four-month depression, with no residual effects, was not of sufficient duration to constitute a disability under the ADA. Sanders[*11] at 1354.

Plaintiff claims that his injury is not temporary because it has not yet healed. In a declaration filed on August 7, 1998, approximately three and a half years after the initial injury, plaintiff stated that he is "seriously limited in [his] ability to lift, bend or twist" and does "not seem to be getting any better." (Rondon Decl. P 6).

While it is true that an injury which begins as temporary may become permanent and then qualify as a disability (EEOC Technical Assistance Manual at II-5 (1992)), plaintiff must still demonstrate that his condition

had become permanent and ripened into a disability at the time of discharge. See *Kocsis, 97 F.3d at 884* (holding disability must exist at time of allegedly discriminatory act); see also *Visarraga v. Garrett, 1992 U.S. Dist. LEXIS 9164,* at *6 (N.D. Cal. 1992) (no disability existed because, "in the relevant time period, [plaintiff's] lower back strain-sprain was considered by her treating physician . . . as a temporary condition."). To hold otherwise would force employers to treat all injuries as disabilities, regardless of how temporary they might appear, on the chance that such ailments might later fail to heal[*12] properly. As stated in *Forrisi v. Bowen, 794 F.2d 931, 934 (4th Cir. 1986):* "It would debase the high purpose [of the disability discrimination statutes] if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared." Accordingly, plaintiff's current condition is only relevant insofar as it bears on the nature of his injury at the time of discharge.

As discussed above, plaintiff has provided no evidence that, at the time he was discharged, his back strain had become permanent or long-term, or that any physician, supervisor, or even plaintiff, believed the injury had degenerated to this point. Irrespective of whether plaintiff's injury would qualify today as a disability, nothing suggests it had become a disability by the time he was fired. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Approximately eight months after his discharge, plaintiff had an MRI taken of his lower back and a physical examination. Plaintiff submitted a physician's report as to the results of these procedures. (Kinney Decl., Exh. N). Plaintiff has provided no evidence of the significance, if any, of the MRI results. The report of the physical examination is noteworthy nonetheless to the extent it makes no apparent diagnosis and contains no reference to lifting restrictions. No other medical record or report was submitted.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

[*13]

Considering the nature, severity, and the duration of the plaintiff's injury, the Court concludes that at the time

plaintiff was discharged he was not substantially limited with respect to the major life activity of lifting.

B. Regarded As Having Impairment

An individual may also qualify as "disabled" for purposes of the ADA if the employer regards the person as disabled. *42 U.S.C. § 12102*(2)(C). Pursuant to the regulations, an individual is "regarded as having such impairment" when he or she:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments described in paragraph . . . (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

*29 C.F.R. § 1630.2(l).*

As articulated by the Supreme Court, the "regarded as" theory of disability reflects the fact that "Congress was as concerned about the effect of an [*14]impairment on others as it was about its effect on the individual." *School Board of Nassau County, Florida v. Arline, 480 U.S. 273, 282, 107 S. Ct. 1123, 1128, 94 L. Ed. 2d 307 (1987).* Where the person is regarded as substantially limited in a major life activity, the individual may suffer discrimination notwithstanding that he or she is not in fact substantially limited. Id.

An individual may satisfy this prong by showing that the allegedly discriminatory action was based on a perception of disability grounded in "myth, fear, or stereotype." EEOC Guidelines, § 1630.2(l). The regulations set forth three examples of how an employer might discriminate against an employee because the employee is "regarded as" disabled: (1) an employer might reassign the person to less strenuous work because of unsubstantiated fears about the person's ability; (2) an employer might transfer the individual to work that does not involve interaction with customers to avoid the negative reactions of others; or (3) an employer might terminate the individual, acting on an unfounded rumor that the person is substantially limited. *29 C.F.R. § 1630.2(l)* (App.).

Plaintiff contends that he was regarded by defendant as having[*15] an impairment that substantially limited a major life function because John Keefe, plaintiff's immediate supervisor, knew plaintiff was restricted from

lifting more than five pounds and from repetitive bending. Plaintiff argues that Keefe, knowing this information, caused plaintiff to be fired.

Plaintiff's argument must be rejected. "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel, 94 F.3d 102, 109 (3d. Cir. 1996)* (citations omitted); see *Thompson v. Holy Family Hospital, 121 F.3d 537, 541 (9th Cir. 1997)* ("Even if [the employer] believed that [the plaintiff] was incapable of lifting 25 pounds, it does not follow that [the employer] regarded [the plaintiff] as disabled.")

Plaintiff points to the proximity in time between Keefe's receipt of the third note and plaintiff's discharge. There is also evidence in the record that Keefe may have anticipated scheduling problems during the three-week period in which plaintiff was restricted from working more than three days in succession. [*16] (Kinney Decl., Exh. G). Although these facts may be sufficient to raise an inference that plaintiff was discharged because of an acute condition, they do not suffice to show plaintiff was regarded as being disabled. "An employer's decision to terminate an employee based upon the physical restrictions imposed by [the employee's] doctor does not indicate that the employer regarded [the employee] as having a substantially limiting impairment." *Thompson, 121 F.3d at 541* (citations and internal quotations omitted).

To demonstrate defendant regarded plaintiff as disabled, plaintiff must provide some evidence that defendant believed, rationally or otherwise, that plaintiff had a physical impairment substantially limiting a major life activity. See *Id.; Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319-20 (8th Cir. 1996)* (holding employer's awareness of plaintiff's medical problems not sufficient to establish employer regarded plaintiff as disabled). "If a defendant perceives plaintiff as having a minor, temporary condition, the plaintiff is not covered by the Act." *Mendez v. Gearan, 956 F. Supp. 1520, 1524 (N.D. Cal. 1997).*

In the instant case, plaintiff has[*17] provided no evidence from which one could infer that Keefe regarded plaintiff as having anything but a temporary back strain. Back strains are generally not the subject of "myth, fear, or stereotype" resulting in a prejudicial overestimation of an employee's actual impairment. Nor has plaintiff provided evidence suggesting that Keefe was acting on an unfounded rumor of impairment. In fact, plaintiff, at his deposition, testified that Keefe chided plaintiff for not being tougher with regard to his injury, suggesting that, if

anything, Keefe underestimated the severity of plaintiff's impairment. (Kinney Decl., Exh. C). Accordingly, on the evidence presented, plaintiff cannot avail himself of this theory of disability.

Plaintiff argues for the first time, in a motion in limine, that FEHA defines "regarded as" more broadly than the ADA and therefore, FEHA provides an avenue for relief even if his ADA claim fails. Under FEHA, a physical disability includes:

Being regarded as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability.

Gov. [*18] Code § 12926(k) (emphasis added).

Plaintiff argues that, even if he does not otherwise qualify as disabled at the time of discharge, he had a condition that could have become a physical disability if it did not improve with time. While this might be true with respect to the state of plaintiff's physical condition, it does not speak to defendant's state of mind. Under FEHA, an employee still must submit evidence that the employer regarded the employee as having a condition that could later become a disability.

Plaintiff cites *MacPhail v. Court of Appeal, 39 Cal. 3d 454, 217 Cal. Rptr. 36, 703 P.2d 374 (1985).* In MacPhail, however, the employer concededly found the plaintiff to be unqualified for employment because x-rays revealed "anomalies of the lumbar spine, which the [the employer] believed would present a higher than average risk of future back injury." *Id. at 456.* In contrast to the plaintiff's showing in MacPhail, plaintiff here has presented no evidence that Wal-Mart believed his back strain could become a disability. Without such a showing, plaintiff's FEHA claim fares no better than his ADA claim.

CONCLUSION

Plaintiff has failed to raise[*19] a triable issue with respect to disability. Without such a showing, plaintiff's claims under the ADA and FEHA, and for Wrongful Discharge must fail. Accordingly, the Court hereby GRANTS defendant's motion for summary judgment on each of plaintiff's claims.

The Clerk shall close the file.

IT IS SO ORDERED.

Dated: Oct X8 1998

1998 U.S. Dist. LEXIS 16137, *

MAXINE M. CHESNEY

United States District Judge

ROBERT J. CELLA, JR., Appellant, v. VILLANOVA UNIVERSITY; ARAMARK.

No: 03-1749

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

113 Fed. Appx. 454; 2004 U.S. App. LEXIS 21740

May 24, 2004, Argued
October 19, 2004, Opinion Filed

NOTICE:

[**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

PRIOR HISTORY: On Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C. No. 01-cv-07181). Chief Judge: James T. Giles. *Cella v. Villanova Univ., 2003 U.S. Dist. LEXIS 2192 (E.D. Pa., Feb. 12, 2003)*

DISPOSITION: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellant employee appealed a grant of summary judgment in favor of appellee employers by the United States District Court for the Eastern District of Pennsylvania in the employee's action under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA).

OVERVIEW: After being fired from his custodial job, the employee sued the employers under the ADA and the PHRA, claiming that he suffered discrimination and a hostile work environment because of a physical impairment to his right elbow, colloquially diagnosed as "tennis elbow." The appellate court held that there was no question that the employee's elbow problems qualified as a physical impairment under *42 U.S.C.S. § 12111*(8). However, the employee failed to prove that his impairment substantially limited a major life activity. The fact that the employee's doctors put him on restriction from lifting over 10 pounds for a period of time did not establish that the impairment substantially limited a

major life activity. Consequently, the trial court properly granted summary judgment to the employers under *Fed. R. Civ. P. 56(c)*.

OUTCOME: The judgment was affirmed.

LexisNexis(R) Headnotes

COUNSEL: Jeanne M. Cella, Esquire (Argued) Black & Associates, Media, PA, Counsel for Appellant.

Neil J. Hamburg, Esquire (Argued) JuHwon Lee, Esquire Michael E. Sacks, Esquire Hamburg & Golden, Philadelphia, PA.

Hope A. Comisky, Esquire (Argued) Pepper Hamilton. Philadelphia, PA, Counsel for Appellees.

JUDGES: BEFORE: ROTH and STAPLETON, Circuit Judges, and SCHWARZER,* Senior District Judge

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

*The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

113 Fed. Appx. 454, *; 2004 U.S. App. LEXIS 21740, **

OPINIONBY: ROTH

OPINION:
[*454] ROTH, Circuit Judge:

In this appeal, Robert Cella claims that he suffered discrimination and a hostile work environment because of a physical impairment to his right elbow, diagnosed as lateral epicondylitis, or more colloquially, "tennis elbow." After being fired from his custodial job, he sued his alleged[**2] employers, Villanova University and Aramark Facilities Services, Inc., under the *Americans with Disabilities Act* (ADA) and the *Pennsylvania Human Relations Act* (PHRA). The District Court granted summary judgment in favor of defendants, finding that Cella had failed to prove that his impairment substantially limited one of his major life activities and that he had failed to present evidence showing Aramark to be his employer. On March, 14, 2003, Cella filed the present appeal.

[*455] We exercise plenary review over an order granting summary judgment. *Detz v. Greiner Indus., Inc., 346 F.3d 109, 115 (3d Cir. 2003).* Summary judgment is only granted if "there is no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *F.R.C.P. 56(c).* We must draw all factual inferences and resolve all doubts in favor of the non-moving party. See *United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962).* We have jurisdiction in this case pursuant to *28 U.S.C. § 1291.*

Because we write only for the parties and the facts are familiar to them, [**3]we will not repeat the facts here.

To be covered under the ADA (or PHRA**), Cella had to show that he was a "qualified individual with a disability" as defined by the Act. *42 U.S.C. § 12111(8).* The Act defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id. § 12102(2).* There is no question in this case that Cella's elbow problems qualify as a physical impairment. *** The only question for us, then, is whether his elbow problems "substantially" limited one of his "major life activities."

----------------Footnotes----------------

** As the District Court recognized, claims under the PHRA are generally subject to the same analysis as claims under the ADA. See *Salley v. Circuit City Stores, Inc., 160 F.3d 977, 979 n.1 (3d Cir. 1998)*

(noting that "Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts, among them the ADA," and that without objection by the parties, one analysis under the ADA suffices). Neither party contests this point.

*** Although Cella is currently undergoing treatment for a mental impairment as well, he did not claim this as the basis of his discrimination before the District Court; thus, it is only the physical impairment that we are considering.

----------------End Footnotes----------------

[**4]

The District Court held, and we agree, that Cella has failed to prove that his impairment substantially limited a major life activity. Major life activities include "those activities that are of central importance to daily life." *Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 197, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002).* This inquiry is directed not at an employee's ability to perform a specific job but rather entails a review of many activities, such as "household chores, bathing, and brushing one's teeth." *Id. at 201-02.* Furthermore, the limitation must be substantial; we do not consider "impairments that interfere in only a minor way." *Id. at 197.* For example, in *Toyota Motor Mfg., 534 U.S. at 202,* the fact that the claimant avoided sweeping her house, stopped dancing, occasionally needed help dressing, and had to reduce the amount of time she spent playing with her children, gardening, or driving was not enough to establish as a matter of law that she was covered under the ADA.

Cella's doctors put him on restriction from lifting over ten pounds for a period of time, but we have previously held that this kind of limitation [**5]alone does not establish that the impairment substantially limits a major life activity. See *Marinelli v. City of Erie, 216 F.3d 354, 364 (3d Cir. 2000).* Furthermore, Cella had the burden to show that the impairment's impact was "permanent or long-term." *Toyota Motor Mfg., 534 U.S. at 198* (citing *29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii)(2001)).*

Cella did not submit sufficient evidence to demonstrate that his impairment substantially limited major life functions at the time during which he was employed by Villanova. As the District Judge noted, Cella could

113 Fed. Appx. 454, *; 2004 U.S. App. LEXIS 21740, **

perform major life functions, albeit with some pain. He never put forth [*456] evidence to establish that his injury would be permanent or long term, and there is nothing in the record to indicate that his injury substantially limited any major life functions during the time that he was employed by Villanova.

For the foregoing reasons, we will affirm the judgment of the District Court in favor of defendants.